# Flower and Wife *versus* The Pennsylvania Railroad Co.

1. A train of defendants coming into a city, the engine, tender and one car were detached from the remainder, and run under the charge of the fireman in the engineer's place, to a water-station belonging to the defendants. At the station, the fireman asked a boy ten years old, standing there, to turn on the water : whilst he was climbing on the tender to put in the hose, the remainder of the train came down with their ordinary force, struck the car attached to the engine; the jar threw the boy under the wheel and he was killed. In an action by the parents for his death, *Held,* that it not being in the scope of the engineer's or fireman's employment to ask any one to come on the engine, the defendants were not liable.

2. The boy in climbing on the tender at the request of the fireman, did not come within the protection of the defendants, and they therefore owed no duty to him.

3. Assuming that he was an employee of defendants, at the request of the fireman; this relation would destroy the right of action.

4. Kay *v.* Pennsylvania Railroad, 15 P. F. Smith 269, distinguished.

May 19th 1872. Before AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lebanon county :* No. 57, to May Term 1871.

This was an action on the case, commenced May 9th 1868, in the Court of Common Pleas of Lancaster county, by John M. Flower and Wife against the Pennsylvania Railroad Company, to recover damages for the death of the plaintiffs' son, Phares Flower, a child about ten years old, occasioned, as they alleged, by the negligence of the defendants' servants. On the 31st of August 1869, the cause was removed by the defendants to the

[Flower v. Pennsylvania Railroad Co.]

Court of Common Pleas of Lebanon county, where it was tried November 16th 1870, before Pearson, P. J.

The undisputed facts appeared to be the following :—

The plaintiffs lived in the city of Lancaster, the father, a shoe maker, occupying a shop on the line of the defendants' track, about half-way between James and Lemon streets, the distance between them being about 600 feet, and opposite a water-station of the defendants ; a door from his shop opening on the platform of the station, which is in an excavation about six feet deep. About 8 or 9 o'clock in the morning of the 2d of May 1868, the son went on the platform ; whilst there an engine and tender, with one car of the defendants, under the charge of the fireman only, came up to the station for the purpose of taking water. While the engine was standing, the boy was climbing on the tender, and at the moment some detached cars from above struck the car attached to the tender ; the shock caused the boy to fall ; he was run over and killed.

The evidence of the plaintiffs was from several witnesses.

The father testified that he heard some one ask the boy to put on the hose and turn on the water, just after that he heard a noise, went out and found his son with his neck under a wheel, killed.

George Babel, a boy about thirteen years old, testified that he was standing on the water-station and heard the fireman tell the boy to put the water into the tank ; whilst the boy was getting over the tender to do so, a car ran down the track, jarred the engine and threw the boy off, the car went over him and killed him. This witness and the deceased were the only persons on the platform.

For the defendants :—The fireman denied that he had asked the deceased to put water into the engine ; he testified that he had no power to ask any one to do it ; if he had, he would have violated his duty.

The conductor testified that he had cut the engine and car, it ran down to get water ; he ran the other cars to the water-station to couple them ; he got on to the foremost car, and in attempting to apply the brake the chain broke ; he went on to the other car for the same purpose, but before he reached the brake on that, the cars came together and the accident occurred ; his cars came down at about the rate of three miles an hour.

Black, the foreman of engines, testified that he selected the engineers from the firemen ; engineers are not permitted to carry any one but the conductors and witness ; it is the duty of firemen to supply the engines with water, and they have no power to invite another to put it on ; in the absence of the engineer the fireman acts as engineer for the time being ; they have printed instructions to that effect.

The engineer of the train testified, that as he was coming through Lancaster with his train he was necessitated to leave it, and told the fireman to run to the station and take in water.

The place where the station was, was used exclusively for the passage of trains; the water-station was on a piece of ground held by the company under a long lease; it was not at any public crossing.

The plaintiffs' first point was :—

" If the jury believe that plaintiffs' minor son was induced by the defendants' agent, engaged in his proper employment upon a place of danger, such agent at the time neglecting his own duty, and imposing it upon said minor, and the said minor was there killed by the negligence of said agent, or other agents of the company, plaintiffs are entitled to recover.

To this point the court answered :—

" This point is negatived, as it applies to the facts of the present case; as the person who invited the deceased on the engine or tank had no authority in law so to do, and therefore as relates to the defendants the deceased was a trespasser in getting on the engine or tank—was there without authority."

The court, after referring to the evidence, charged :—

* * * " On this contradictory evidence, it would be left to the jury to determine the disputed facts, and whether there was or was not negligence on the part of the company's servants, which caused the death of this boy, provided the case turned on that question, which in our opinion it does not, but on whether he was on the engine by lawful authority or as a mere intruder and trespasser.

" If the person injured is on the train as a mere trespasser, without authority from any one having power to give it, he cannot recover damages unless injured intentionally or through very gross negligence, and even then probably not from the company, but from the person causing the damage. The same rule prevails where parents sue for the loss of service of the child. If a person is invited on the train by some employee of the company not having the superior control in that department of the company's business, but is at the time out of the range of his employment, and the person invited is injured whilst so on the train, the company is not liable. The injured person is a mere trespasser. The principal may be always considered present when the servant acts within the general scope of his employment. If he travels entirely out of it the principal cannot be affected. * * *

" Where by the rules of the company the engineer and fireman are prohibited from taking any one on the engine except the conductor of the train, or the agent having general control of that branch of the company's business, and the servant (engineer or fireman) permit a man to ride, or invite him on the engine, it is

[Flower v. Pennsylvania Railroad Co.]

out of the usual course of the servant's employment, and if the person so invited is injured through carelessness, the company is not responsible.    The party is there without authority, for it is not the general business of the engineer or fireman to carry passengers, therefore no one can be misled by their situation on the train, nor have they any right, as against the company, to suppose that the engineer or fireman had authority to invite them on the engine or train.    The person inviting would be answerable in damages, but not the company.    It is precisely the same in law as if men or boys should climb on the cars without invitation or request from any one.    Both men and boys are in the practice of intruding on the track of the road, and getting on the cars without justification or excuse, and the company is not responsible in such cases unless for intentional injury by their employees, or for very gross carelessness.    *    *    *    The engineer had no authority by virtue of his office, to invite this boy, or any other outsider, on his engine.    This particular act was prohibited, and it was entirely beyond the general scope of his employment; therefore, if he did say to the boy, 'Put on the hose and turn on the water,' it was no lawful authority for the boy to get on the engine.    So far as it affects the railroad company, it is the same as if the boy had volunteered to do the act, or climbed on the tender without request from any one."    *    *    *

The verdict was for the defendants.

The plaintiffs took a writ of error, and assigned for error the answer to their 1st point and the charge of the court.

*A. C. Reinoehl* and *O. J. Dickey*, for plaintiffs in error, cited 1 Redfield on Railways 512, 513, pl. 6–9.

*H. M. North* and *L. W. Hall* (with whom was *G. F. Breneman*), for defendants in error.—The deceased being where he had no right to be, the plaintiffs cannot recover: Philadelphia and Reading Railroad v. Hummel, 8 Wright 375; Same v. Spearen, 11 Id. 300; Gillis v. Penna. Railroad, 9 P. F. Smith 129.    The employer is not responsible for his servant's acts, not in the scope of his employment: Potter v. Faulkner, 1 Best & Smith 800; Lygo v. Newbold, 9 Exchequer (W., H. & G.) 302; Wilson v. Peverly, 2 New Hampshire R. 548; Thames Steamboat Co. v. Housatonic Railroad, 22 Conn. R. 40; Satterlee v. Groat, 1 Wendell 272; Goodman v. Kennell, 3 Car. & P. 167.    If properly called to assist, the deceased was in the condition of a fellow-servant and the defendants would not be liable for the other servant's negligence: Shearman and Redfield on Negligence 122.

The opinion of the court was delivered, January 9th 1872, by
AGNEW, J.—It is proper this case should be examined in the

[*Flower v.* Pennsylvania Railroad Co.]

light of the evidence of the plaintiffs. According to that view the engine, tender and one freight-car ran down to the water-tank to take in water. They were in charge of the fireman, the engineer having necessarily stopped off till their return. At the water-station the fireman in charge asked the son of the plaintiffs, a boy ten and a half years old, standing on the platform of the water-tank, to put in the hose and turn on the water; and then turned to clean out the ash-pan of the engine. The boy climbed up the side of the tender to put in the hose, and as he did, some detached freight-cars belonging to the train, came down without a brakes-man, and struck the car behind the tender, driving the tender and engine forward from six to ten feet. The boy fell from the tender and was crushed to death. Is the railroad company responsible to the parents? The case involves no public right. The accident happened at no crossing, or place where the public had a right to be. The boy was not a passenger, or one to whom the company owed a special duty. The platform of the water-tank was the private property of the company, and was used for its own pur-poses. The engine and tender were where they had a right to be. The track itself was the property of the company, and the detached cars were not the cause of injury in any sense which affected the public rights or even those of the employees of the company. They came against the car and tender with no great force, and did no injury to the property or employees of the company. They were the cause of injury to the boy, only in so much that he had placed himself in a position of danger, where ordinarily he had no right to be. It is evident therefore that the case turns wholly on the effect of the request of the fireman, who was temporary engineer, to put in the hose, and turn on the water. Did that request involve the company in the consequences? This is a very hard case. A willing bright boy not arrived at years of discretion has lost his life in simply trying to oblige the fireman. But we must not suf-fer our sympathies to do injustice to others, by overriding those fixed principles which underlie the rights of all men, and are essen-tial to justice. It is natural justice that one man should not be held liable for the act of another, without his participation, his privity or his authority. It is clear that the fireman, through his indolence, or haste, was the cause of the boy's loss of life. Unless his act can be legally attributable to the company, it is equally clear the company was not the cause of the injury. The maxim, *Qui facit per alium facit per se*, can apply only where there is an authority, either general or special. It is not pretended there was a special authority. Was there a general authority which would comprehend the fireman's request to the boy to fill the engine-tank with water? This seems to be equally plain with-out resorting to the evidence given, that engineers are not per-mitted to receive any one on the engine but the conductor, and

[Flower v. Pennsylvania Railroad Co.]

the foreman or superintendent, that it is the duty of the fireman to supply the engine with water, that he has no power to invite others to do it, and can leave his post only on a necessity. The business of an engineer requires skill and constant attention and watchfulness; and that of a fireman requires some skill and much attention. They are in charge of a machine of vast power, and large capacity for mischief. The responsibility resting on them and especially on the engineer is great, and neither should be permitted to delegate the performance of his duties to others. In doing so without permission they transcend their powers. There cannot, therefore, be any general authority in the engineer and fireman which can embrace a request to perform the fireman's duty. Even an adult to whom no injury would be likely to ensue could not justify under the fireman's request. Much less can there be any presumption of authority to invite a boy of tender years to perform a service, which required him to clamber up the side of the engine or tender. It was a wrong on part of the fireman to ask such a youth to do it. Whether the boy could be treated as a mere trespasser is scarcely the question. His youth might possibly excuse concurrent negligence where there is clear negligence on part of the company. Such were the cases of Lynch v. Nurdin, 1 A. & E. N. S. 29 (41 E. C. L. 422;) Rauch v. Loyd & Hill, 7 Casey 358; Smith v. O'Connor, 12 Wright 218. See also Railroad Co. v. Spearen, 11 Wright 300, and Oakland Railway Co. v. Fielding, 12 Id. 320. The true point of this case is, that in climbing the side of the tender or engine at the request of the fireman, to perform the fireman's duty, the son of the plaintiffs did not come within the protection of the company. To recover, the company must have come under a duty to him, which made his protection necessary. Viewing him as an employee at the request of the fireman, the relation itself would destroy his right of action: Caldwell v. Brown, 3 P. F. Smith 453; Weger v. Penna. Railroad Co., 5 Id. 460; C. V. Railroad Co. v. Myers, 5 Id. 288. Had the fireman himself fallen in place of the boy, he could have had no remedy. It does not seem to be reasonable that his request to the boy to take his place, without any authority, general or special, can elevate the boy to a higher position than his own, and create a liability where none would attach had he performed the service himself. It is not like the case of one injured while on board a train by the sufferance of the conductor, whose general authority extends to receiving and discharging persons to and from the train: Penna. Railroad v. Books, 7 P. F. Smith 339. It is not like those cases where an injury happened to boys crawling under the cars to get through a train occupying a public street, which they had a right to cross: Rauch v. Loyd & Hill; Penna. Railroad Co. v. Kelly, 7 Casey 358 & 372. Nor does it resemble the case of Lizzie Kay v. Penna. Railroad Co., 15 P. F. Smith

269, decided at Philadelphia last year, where detached cars were sent around a curve, without a brakesman in charge, upon a track which the public had been in the habit of travelling over constantly for a long time with the knowledge of the company, from one part of the city of Williamsport to another. Here the boy was voluntarily where he had no right to be, and where he had no right to claim protection; where the company was in the use of its private ground, and was not abusing its privileges, or trespassing on the rights or immunities of the public. The only apology for his presence there, is the unauthorized request of one who could not delegate his duty, and had no excuse for visiting his principal with his own thoughtless and foolish act. Nor can the mere youth of the boy change the relations of the case. That might excuse him from concurring negligence, but cannot supply the place of negligence on part of the company, or confer an authority on one who has none. It may excite our sympathy, but cannot create rights or duties which have no other foundation.

Upon the whole case, finding no error in the record, the judgment is affirmed.