Kentucky Central R. R. Co. v. Gastineau's Adm'r.

CASE 19—PETITION ORDINARY—JUNE 3.

# Kentucky Central R. R. Co. v. Gastineau's Adm'r.

| 83 | 119 |
|----|-----|
| 85 | 228 |

| 83 | 119 |
|----|-----|
| 89 | 234 |

| 83 | 119 |
|----|-----|
| 96 | 108 |

APPEAL FROM FAYETTE COURT OF COMMON PLEAS.

| 83 | 119 |
|-----|------|
| 104 | 614 |

| 83 | 119 |
|-----|------|
| 108 | 139 |

| 83 | 119 |
|-----|------|
| 111 | 711 |

| 83 | 119 |
|------|------|
| e117 | 299 |
| 117 | 776 |

| 83 | 119 |
|------|------|
| e126 | 620 |

| 83 | 119 |
|------|------|
| f135 | 809 |

1. TRESPASSERS UPON THE YARD OR TRACK OF A RAILROAD COMPANY can not recover of the company for injury unless it was wantonly inflicted after the danger was discovered.

2. RAILROADS—DUTY TO ONE ASSISTING EMPLOYE.—One who undertakes to assist an employe of a railroad company, at the request of the employe, does not thereby place himself within the protection of the company so that it is bound to anticipate and ascertain if he has placed himself in danger, unless the employe has express authority from the company to make the request, or occupies such a position toward the company and the act to be done, that the authority can be fairly implied.

3. RIGHTS OF TRESPASSING CHILDREN.—One is bound to exercise reasonable care to *anticipate* and prevent injury to a child of such tender years as to have little or no discretion, although the child be a trespasser.

In this case it was a question for the jury whether a boy about fourteen years of age, killed while uncoupling cars, from his age and experience, had discretion sufficient to recognize his danger and guard against it. If he had, being a trespasser, the company was not bound to *anticipate* and provide against peril to him.

4. PUNITIVE DAMAGES.—It was error to instruct the jury that if the defendant was guilty of willful neglect they "*ought*" to award punitive damages. Nor was the error cured by telling them in another instruction that they "*could*" find any sum as punitive damages not exceeding the amount claimed in the petition.

5. WILLFUL NEGLECT is an intentional failure to perform a manifest duty in which the public has an interest, or which is important to the person injured, in either preventing or avoiding the injury.

6. IN FIXING COMPENSATORY DAMAGES for loss of life the inquiry should be limited to the power of the deceased to earn money, had he not been killed, and the jury should not be directed to inquire as to the "*value*" of that power.

BRECKINRIDGE & SHELBY FOR APPELLANT.

1. Where a stranger comes upon ground to which the right of a railroad company is exclusive, and voluntarily assists its employes in

the performance of a dangerous work, the company is not liable·
for an injury resulting to him from the negligence of its employes,
unless, perhaps, the negligence be "willful," and be after the dis-
covery of his danger. (Flower v. Penn. R. R. Co., 69 Pa. St., 210,
8 Amer. Rep., 251; New Orleans, etc., R. R. Co. v. Harrison, 48
Miss., 112, 12 Amer. Rep., 356; Canley v. Pittsburg, etc., Ry. Co.,.
96 Pa. St., 398, 40 Amer. Rep., 664; Sherman v. Hannibal, etc.,.
R. R. Co., 72 Mo., 62; Everhart v. Terre Haute, etc., R. R. Co.,
78 Ind., 292, 41 Amer. Rep., 567; 1 Addison on Torts, section 566;
Mason v. Missouri Pacific Ry. Co., 27 Kans., 83, 41 Amer. Rep.,
405; P. & R. R. R. Co. v. Hummell, 44 Pa. St., 375; Degg v..
Midland R. R. Co., 1 Hurlst. & Norm., 773; Carter v. L. & N. R.
R. Co., 4 Ky. Law Rep., 825; B. & O. R. R. Co. v. Schwindling,.
22 Amer. Law Reg., 453; General Statutes, chapter 57, section 1.)

2. A person voluntarily assisting the employes of another in their
work, sustains himself *quoad hoc*, the relation of servant to their
employer, or at least a relation no more favorable than that of
servant; and if the employer be a railroad company, it is, under
our express statute law, not liable for the death of such volunteer,
caused by the ordinary neglect of its employes. (General Statutes,.
chapter 57, section 1.)

3. As to definition of "willful neglect," given by lower court. (L. &
N. R. R. Co. v. Filbum's Adm'r, 6 Bush, 580; Board of Int. Imp.
v. Scearce, 2 Duvall, 579; Jacobs v. L. & N. R. R., 10 Bush, 273.)

4. As to definition of compensatory damages given by lower court.,
(L., C. & L. R. R. v. Case's Adm'r, 9 Bush, 737.)

HARGIS & EASTIN FOR APPELLEE.

1. A railroad company can not escape liability for injury to an in-
fant of tender years, simply because the infant *voluntarily* placed
himself in a perilous position. If the agents of the company knew·
of the peril and consented to it, that of itself was a continuing·
act of negligence, for which the company is liable. (L. & N. R..
R. Co. v. Wolfe, 80 Ky., 85.)

2. The plaintiff may recover, notwithstanding his own negligence ex-
posed him to the risk of injury, if the defendant, after becoming.
aware of the plaintiff's danger, failed to use ordinary care to avoid.
injuring him. (Sherman & Redfield on Negligence, sections 36,
37; Lafayette, etc., R. R. Co. v. Adams, 26 Ind., 76; L. & N. R..
R. Co. v. Collins, 2 Duv., 116; L. & N. R. R. Co. v. Sickings, 5·
Bush, 4; L. & N. R. R. Co. v. Filbum, 6 Bush, 575; L. C. & L.
R. R. Co. v. Mahoney, 7 Bush, 239; P. & M. R. R. Co. v. Hoehl,.
12 Bush, 43.)

3. The instructions,· when considered together, do not *require* the jury·
to give punitive damages, but if they do they are not erroneous,·

as the statute provides that the plaintiff in such actions "*shall have the right*" to recover *punitive* damages. (General Statutes, chapter 57, sections 1 and 3; L. & P. Canal Co. v. Murphy, 9 Bush, 526; Chiles v. Drake, 2 Met., 151.)

4. The definition of "willful neglect" is not objectionable. (Jacobs' Adm'r v. L. & N. R. R. Co., 10 Bush, 273; L. & N. R. R. Co. v. McCoy.)

BRONSTON & KINKEAD ON SAME SIDE.

1. As the act of appellant's servants, in permitting the boy to be about. the cars, was a continuing act of negligence, they are to be held to have been aware of his danger from the time he was first seen upon the cars, or at least from the time he was ordered to couple them, and, therefore, it would not have been proper to instruct. the jury that appellant must, after his negligence, have become aware of the danger and then have failed to use proper care. (L. & N. R. R. Co. v. Wolfe, 80 Ky., 85; Jacobs' Adm'r v. L. & N. R. R. Co., 10 Bush, 273.)

2. Willful neglect was properly defined. (Board of Int. Imp. Shelby Co. v. Scearce, 2 Duv., 576; City of Lexington v. Louis, 10 Bush, 680.)

3. As to compensatory damages. (Sedgwick on Measure of Damages, section 35; Parks v. Jenkins, 8 Bush, 587; Sherman & Redfield on Negligence, section 606; L. C. & L. R. R. Co. v. Case's Adm'r, 9 Bush, 736.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Robert M. Gastineau, a boy between fourteen and fifteen years of age, was run over and killed by a car of the appellee, which he was endeavoring to uncouple from a train, while switching in the company's yard. In this action by his administrator for damages, the jury found a general verdict for five thousand dollars; and also, by a special verdict, found that the deceased, when killed, was voluntarily assisting the employes of the road, with their knowledge and consent, in switching the cars; that they discovered his peril, but too late to prevent his death; and that he contributed to it by his presence and effort to uncouple the car.

The lower court refused to render a judgment for the appellant upon the special verdict, and sustained the general one; and upon this appeal the special findings must be treated as true.

If the deceased could be regarded as the servant or employe of the company at the time of his death, then, being engaged in a common service with its other employes, the company would not be liable for the neglect of the latter unless it were willful, and in the course or purpose of the employment. But he did not, in a legal sense, occupy that relation, and was to it a stranger; and in this light the rights of the parties must be viewed.

A railroad company has the right to the exclusive use and occupation of its yard or track, except at crossings or such places as the public are, by law, authorized to use; otherwise, it could not properly perform its duties to the public. It is not required to anticipate the intrusion of others; and one who enters upon them without right, does so at his peril; and, in case of injury, can not recover, unless it was wantonly inflicted after the danger was discovered. Its duty to such a person or a trespasser is merely negative—it must not, when it knows of the peril, act maliciously or with a disregard of obvious consequences. It is not required to use care to *anticipate and discover* the peril to such a person, but only to do so *after the discovery* of the danger. Until then no legal duty is imposed upon it, because no one, by a wrongful act, can impose a duty upon another.

It is urged, however, that this case, by reason of

the age of the deceased, and his presence upon and about the train with the knowledge of the company's employes, is not governed by the above rule; that it was the duty of the company to prevent his being there; that his age, and the numerous dangers incident to railroading, placed him in constant peril when upon or about the train, even if not engaged in coupling or uncoupling the cars; and that the company, therefore, discovered his danger in time to have saved him, although the immediate peril arising from his effort to uncouple the cars was not known in time to do so. Our sympathies must not be permitted to decide this question. If so, we might do injustice to others, and override fixed rules and principles essential to equal justice.

Without having in view, for the present, the age of the deceased, we remark that the fact that a mere employe knows of the presence of the intermeddler does not legalize it, and so place him as to the company, and within its protection, that it is bound to anticipate and ascertain if he has placed himself in danger, instead of merely being bound to use reasonable care to avert it after its discovery. It has been held that even a request to one, by an employe of the company, to do some act connected with the management of a train, does not impose such a duty upon or render the person less an intermeddler as to the company; and certainly this is so, if the employe has no authority from the company to make the request, or does not occupy such a position toward it and the act to be done, that the authority can be fairly implied. (Everhart

v. Railroad Co., 78 Ind.; 292; Railroad Co. v. Harrison, 48 Miss., 112; Flower v. Railroad Co., 69 Pa., 210; Degg v. Midland R. Co., 1 H. & N., 773; Mason v. R. Co., 27 Kansas, 84.)

Mr. Pierce says: "A person who undertakes to assist a servant, without the master's request, can not recover against the master for an injury caused by the servant's negligence." (Pierce on Railroads, page 370.)

In the case now before us the special findings do not show specifically what employes of the road, who were present when the accident occurred, knew of, and consented to, the decedent assisting in the switching of the train; but it appears that none of them had any express authority from the company to authorize it, nor is it, in our opinion, shown that any of them occupied such a position toward the company, and the work then in hand, as to imply it. Neither can it be said, that because the deceased was merely upon and about the train, that he was, thereby, in such danger that the company, although he was there without right, were bound to anticipate his injury, and guard against it. The question then recurs, did his age alter this rule? Undoubtedly children of tender years should not be treated strictly as trespassers, when guided by childish instincts they stray upon the track or into the yard of a railroad. Thus the rule that a traveler, about to cross a railroad track, must be vigilant and look both ways, does not apply to an infant of tender years. He knows nothing of care, diligence or danger. The rule as to negligence upon

his part, and by an adult, is, properly, quite differ-ent. The latter must give that care to his own protection which is ordinarily exercised by one of ordinary discretion; while less is required of an infant, the degree depending upon his age, matur-ity and knowledge. We are aware that it has been held in some cases, as, for instance, in Flower v. Railroad Co., *supra*, that if the deceased is a tres-passer, his being of tender years makes no differ-ence, because the company is under no duty to him which requires his protection; but, in our opinion, age should be considered upon a question of con-tributory neglect; and one should exercise reasona-ble care to anticipate and prevent an injury to a child of such tender years as to have little or no discretion, although he may be technically a tres-passer. His condition excuses his concurrent neg-ligence. Humane considerations require such a rule.

Thus one may incur liability for an injury to a child of tender years, by leaving dangerous machin-ery where it is accessible to him, although there would be no liability to an adult or a child of years of discretion under the like circumstances. So a railroad company should be held liable if its employes, in charge of its moving train, see that a child, say two years old, is walking around it, and fail to look to its protection, although it may technically be a trespasser, and not, at the moment, in immediate danger. Their neglect to do so would be willful. A child without discretion, although a trespasser, occupies a legal attitude to the company similar to that of an adult, who is not a trespasser,

save a greater degree of caution should be exercised. as to the former, by reason of his helplessness.

If, however, the child, although young, is capable of the discretion required of an adult, the rule applicable to adults must be applied to him. If he has sufficient age and intelligence to know the danger he is incurring, then his negligence will defeat a recovery; and, as in case of an adult, the company is not bound to anticipate and provide reasonably against danger to him; and is only liable, if, after the peril is discovered, it can save him and fails to do so.

The instructions in the case now under consideration substantially told the jury that the company, in its own yard and as to a trespasser, were bound to anticipate his danger and provide against it, without regard to his discretion and age; and no interrogatory was submitted to them for a special finding as to whether, from his age and experience, the deceased had discretion sufficient to recognize his danger and guard against it. The jury should have been so instructed as to enable them to find, or the court, by a finding, informed whether, from the age of the deceased, he had discretion enough to know his danger and guard against it or not; and, if he had, that then, owing to his being a trespasser, the company was not bound to anticipate and provide against peril to him, but only to avoid injuring him, if possible, after his peril was discovered; but that, if, by reason of his age, he lacked such discretion and knowledge of the danger, that then, if the company, by the exercise of ordinary care by

its employes, might have become aware of and pre-
vented it, that then it was bound to exercise it and.
guard against the injury. Of course we do not
mean by this to say that a railroad company is an
insurer against accidents to children, and that it is.
liable for injuries to them which can not well be
foreseen; but if they are of such tender years as
to be devoid of discretion, then justice and the dic-
tates of humanity require the exercise of reasona-
ble care to prevent their being placed in danger,
even though they may be, technically, trespassers;
and this would be lacking if the employes of a
company were to switch their trains, knowing that
a child of such tender years as to have no discre-
tion was in the immediate vicinity of them. (Smith.
v. O'Connor, 48 Penn., 218; Railroad Co. v. Stout,
17 Wall., 657.)

The instructions given to the jury were also objec-
tionable, in telling them that if the company was.
guilty of willful neglect, that then they *"ought"*
to find punitive or exemplary damages.

The language of the statute is: "Shall have the
right to sue  *   *   *   *   and recover punitive
damages." Prior to its enactment no right of ac-
tion existed when death resulted immediately from
an injury; and its object undoubtedly was to extend
and give the same rights, in case death resulted, as
were, by the common law, given to the injured
party, if death did not ensue; and, in the latter
case, the allowance of punitive damages was en-
tirely within the discretion of the jury, although
the expression, "is entitled to punitive damages,"

is to be found in the common law text-books, when speaking of injuries from willful neglect.

The fact that the court subsequently instructed the jury that, if they found the company guilty of willful neglect, they *could* find any sum as punitive damages, not exceeding the amount claimed in the petition, did not, in our opinion, cure the error or prevent the jury from being misled.

The definition of willful neglect, as found in the instructions, was also calculated to mislead the jury. It has been repeatedly defined by this court to be an intentional failure to perform a manifest duty in which the public has an interest, or which is important to the person injured, in either preventing or avoiding the injury.

The jury were also told, that "compensatory damages are such as will, in the opinion of the jury, compensate plaintiff as administrator for his intestate's life; and, in fixing the amount of compensatory damages, the jury can inquire as to the value of the decedent's power to earn money, had he not been killed."

It should have been limited to such power, and the jury not permitted, as they may well have supposed from this instruction they could, to fix some speculative value to "compensate plaintiff as administrator for his intestate's life."

Judgment reversed, and cause remanded for further proceedings in conformity with this opinion.