SAWER GLOWACKY, ADMINISTRATOR AD PROSEQUEN-
DUM OF MICHAEL GLOWACKY, DECEASED, PLAIN-
TIFF-RESPONDENT, v. SHEFFIELD FARMS COMPANY,
DEFENDANT-APPELLANT.

Decided October 18, 1926.

Negligence—Death of Boy Resulting From Fall From Running
Board of a Milk Truck—Plaintiff Claimed Boy was Employed
by Defendant's Driver—Evidence Shows That Defendant Did
Not Authorize Drivers to Employ Assistance, That it Had No
Knowledge That They Were Doing So—There Also was No
Evidence That the Driver in Question was Doing So, Nor
That He Knew the Boy was on the Truck—Boy Held a
Trespasser, and Judgment for Plaintiff Reversed.

On appeal from the Hudson County Court of Common
Pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH
and CAMPBELL.

For the appellant, *Autenrieth & Gannon.*

For the respondent, *Alexander Simpson.*

PER CURIAM.

This is an appeal from a judgment entered on the verdict
of a jury in the Hudson County Court of Common Pleas in
favor of the plaintiff below against the defendant below for
the sum of $6,000.

The plaintiff's decedent was a minor, thirteen years of
age at the time of his injury and death. The defendant is
a corporation selling and dealing in milk at wholesale and
retail. The milk was received and obtained by it in the
Pennsylvania Railroad Company's yards, at Jersey City, from
the latter's freight cars. On the 17th day of October, 1924,
the plaintiff's decedent was run over and killed by one of
the trucks of the defendant company. The plaintiff brought
his action against the defendant under the Death act, to
recover the pecuniary loss sustained by the decedent's father
and brother, alleging as the cause of decedent's death de-

fendant's negligence, and which action resulted in a verdict and judgment thereon against it, as above stated. For the conduct of its business the defendant had in operation many motor trucks, amongst which was a nine-ton Mack truck, which, on the day in question, at about five o'clock in the afternoon, in charge of a chauffeur, accompanied by a helper, was being driven to the Pennsylvania Railroad Company's yards at the foot of Exchange Place, Jersey City, to deliver a load of empty milk bottles and to take a load of filled bottles of milk and milk in cans.

There was uncontroverted proof that the drivers were expressly forbidden to hire anyone to help them in the discharge of their duties, and, in addition, notices to that effect were conspicuously posted at the place where the driver called for their trucks.

There was some evidence in the cause that on several occasions the driver's helper requested lads ranging from twelve to fifteen years to help the driver, and that the latter would compensate them for their work with a bottle of milk. There was no testimony that these acts of the helper or driver were ever brought to the notice of the defendant company, or that it had knowledge of any such conduct as attributed to them.

Richard Williams, aged fifteen, who claimed to be one of the boys employed to help in loading and unloading the truck, called by the plaintiff, testified that he helped the helper; that it was the defendant's helper who asked him whether he wanted to help the chauffeur, and upon saying yes, started in to help. Williams further testified that shortly before the happening of the accident he hailed the truck at Grand and Washington streets, about two and a half blocks from the river front, and rode to the ferry entrance; that the driver slowed up to let him on; that he got on the "run board," that is where he rode, and while there the defendant's helper got off at the Hudson terminal, in Jersey City. Whether Williams got on the driver's seat after the helper left the truck is in some confusion. Williams, according to his testimony, rode two blocks and a half on the running board. He says, later on, that he was sitting on the driver's

seat next to the driver, and that the helper was also sitting in the same seat, and it may be that when the helper left he took the vacant seat. At any rate, the witness testified that the truck had entered through the gate and had gone about ten feet when he saw the plaintiff's decedent running through the car house and make an attempt to get hold on the side of the grip when he said: "Chauffeur, wait, here's a little boy that will help you. And I put out my hand to get him, but he kept right on, and when I turned around again to look the boy was not there." The witness further testified that he saw the decedent standing on the running board, and while he spoke to the driver the decedent disappeared; that at the time the decedent attempted to board the truck it was going fast. There was an utter absence of proof that the driver saw the decedent, or that he saw or knew that the decedent was standing on the running board.

Viewing the testimony most strongly in favor of the plaintiff and accepting the plaintiff's theory that it was the habit of the driver to hire boys to help him, we are confronted with the unchallenged situation that the driver's act in that regard was unauthorized and in defiance of express orders of defendant not to engage in such practice, and, furthermore, that the defendant company was unaware of the practice in disobedience of its express orders. For this reason alone the plaintiff's decedent was disentitled to recover. An equal bar to a recovery is the undisputed fact that the plaintiff's decedent was running for the truck and was aware that it was not slackening its speed, but was going fast, and, hence, was not going to stop for him and take him on, nevertheless, he made the attempt to board it and succeeded in obtaining a momentary foothold, when he either slipped or fell off through the ordinary movements of the vehicle. There being no proof that he was invited to get on, but, on the contrary, made the attempt to board the truck as above stated, he was there as a trespasser, and, therefore, there was no legal duty owing to him from the defendant except to refrain from inflicting upon him a willful and wanton injury.

For the reasons stated, the judgment is reversed.