THOMAS K. SHAPPLEY v. R. F. GRAVES, Admr. of ELMO WAYNE GRAVES.

Western Section. February 8, 1929.

Petition for Certiorari denied by Supreme Court, May 27, 1929.

568

Wilson, Gates & Armstrong, of Memphis, for plaintiff in error.

Grover McCormick and Carl R. Graves, of Memphis, for defendant in error.

HEISKELL, J. R. F. Graves, Administrator of Elmo Wayne Graves, an infant five years of age, sued the defendant for the alleged wrongful death of his decedent, claiming that he was killed by the negligent operation of a mule drawn coal cart. The defendant's colored driver, Wesley Thurmond, was delivering for defendant a cart of coal to the residence of Mrs. J. R. Henderson on Azalia Street (running approximately north and south) in the City of Memphis.

The driveway into the Henderson residence (which is on the east side of Azalia Street) runs from the street east toward the rear of the premises, and is on the north side of the Henderson residence.

As the driver of the defendant's cart started into the driveway he found it blocked by a wagon. He called, and Frank Henderson (Mrs. Henderson's thirteen year old son) came to help him move this wagon. While they were engaged in moving the wagon, three children, including plaintiff's decedent, gathered around the coal cart and the mule, and were warned at least twice by the driver to get away.

Whether the driver was led to believe by the action of the children that they had gone away is a disputed question. However this may be, after the wagon was removed from the driveway, the driver of the cart remounted to the driver's seat and began to drive slowly toward the rear of the Henderson premises in order to unload the coal. While so driving, some of these three boys maybe all of them, and certainly plaintiff's decedent, came up behind the cart and swung on to the rear of it. Whether or not the driver had reason to know of this is the subject of controversy.

When the cart had been driven back about as far as the rear of the Henderson house, the head of the mule was turned north and the cart was backed against the house catching the boy Elmo Wayne Graves between the cart and the side of the house and killing him. Whether at the time he was crushed between the cart and the house the boy was hanging on to the cart or standing on the ground is a question in dispute.

Defendant moved for a directed verdict. His motion was overruled and the case submitted to a jury and the result was a verdict for the plaintiff. The defendant has appealed and assigned errors.

The defendant's theory of the case, which he insists is supported by the undisputed evidence, is that the children were repeatedly and emphatically warned away from the cart; that, apparently, they did leave it; that then, without the driver's knowledge and consent, they climbed back on the cart and the plaintiff's decedent was hurt. He insists that under these circumstances the plaintiff's decedent became a trespasser and the defendant is not liable in the absence of the evidence of wilful or wanton injury, of which there was none. He further insists that under these circumstances there is no evidence that the defendant knew, or in the exercise of reasonable care should have known, of the presence of the plaintiff's decedent on the cart and there is, therefore, no evidence even of simple negligence, and that there can be no recovery against the defendant.

The theory of the plaintiff is that the driver knew that the children were playing about the cart, swinging on behind. He knew that when he warned them away more than once they returned and therefore he either knew or as a reasonable man, was bound to know that the Graves boy was behind the cart and was bound therefore to exercise ordinary care to prevent injury and that when the driver turned the mule to the north and backed up against the house without warning and without taking any precautions to ascertain the danger of plaintiff's decedent, the driver failed to exercise ordinary care.

The defendant's contention is that the only rule which would save the decedent from the category of a trespasser, would be to hold the coal cart an attractive nuisance and that it has been decided that this is not so. Plaintiff insists that in this class of cases of very young children playing around and getting on vehicles where the driver knows or has reason to know the danger that the doctrine of trespassers and that the defendant owes no obligation except to abstain from wilful or wanton injury, has no application, but the driver is bound to ordinary care. Plaintiff insists that this entitles him to the verdict even if it be assumed that the decedent was swinging on behind the cart when it was backed into the house, but that the proof shows that the decedent was standing on the ground by the house when caught between the cart and the house and therefore not a trespasser even under the defendant's theory.

Under the first three assignments, defendant insists that he was entitled to a directed verdict because there is no evidence to sustain the verdict; by reason of the theory that the boy swinging on to the cart was a trespasser and defendant not shown to be guilty of wilful or wanton injury. The third assignment goes to the testimony of Lester Shook to the effect that the boy killed was standing on the ground at the time. This is the only testimony to this effect

and defendant made a motion to exclude this testimony because it expressed a mere opinion. Lester Shook was introduced by defendant. He was five years old, was one of the boys playing around the coal cart. Counsel for defendant was examining him and the record shows this:

"Q. I know he was mashed on the house, but what was the little boy doing when his head got mashed, the little Graves' boy, what was he doing? A. I don't know what he was doing.

"Q. Do you know whether he was standing on the ground or hanging on the cart or what he was doing? A. He was standing on the ground.

"Q. Had he been hanging on the cart? A. Yes, sir.

"Q. Had you been hanging on the cart? A. Yes sir.

"Q. You had been? A. Yes sir.

"Q. Had the other little boy been hanging on the cart? A. Yes, sir.

"Q. When had you gotten off of the cart? A. Just a little while ago, before he got killed.

"Q. Just a little while before he got killed. Had all three of you gotten off, or two of you or what? A. All three.

"Q. After you got off, what did this little boy that got killed do? What did he do after you got off? A. He went and got back on.

"Q. He went and got back on? A. Yes sir.

"Q. That was the last you saw him do? A. Yes sir.

"Q. Were you boys back behind the wagon when you got off? A. Yes sir.

"Q. How did you happen to get off? A. He told us to get off, and he was getting off and then he got back on.

"Q. He saw you getting off, and he got off, and then he got back on the wagon? A. Yes sir.

"Q. Show us how you were hanging on the wagon? A. A little board down there—the way we hang on we put our feets up on the truck.

"Q. Was this the way this little boy was hanging on? A. Yes sir.

"Q. Did all three of you get off first, and then this little boy get back on, or how was that? A. I don't know.

"Q. Well, I understood you to say a while ago, and let's see if I am right or wrong about it, I understood you to say that all three were hanging on at first? A. Yes sir.

"Q. And that all three got off? A. Yes sir.

"Q. And this little boy got off? A. Yes sir.

"Q. Is that right? A. Yes sir.

"MR. ARMSTRONG: That is all.

"Mr. McCORMICK: That is all. I don't want to ask him anything."

We cannot say it was error to refuse to exclude so much of this testimony as stated that the Graves boy was standing on the ground at the time he was killed. However, if the contention of plaintiff is correct as to the rule in regard to the care required in case the decedent was hanging on behind the cart, this testimony of Lester Shook is immaterial. Counsel for plaintiff relies upon the case of Ziehm v. Vale, 1 A. L. R., 1381.

In this case the defendant drove his automobile up to the curbing in front of his father-in-law's home in Cleveland, Ohio, went into the house and remained approximately twenty minutes. He came out and saw several children on the running board of his car near the curb. He ran the children away, the plaintiff among them. He went to the front of his car, cranked it, and came around to the left side of the car and got in through the left door, and on the left running board was the plaintiff. The defendant said that he "shooed him away with his cap" and that the child went away. The child was four and one-half years of age. The defendant got into his car and started it off. In the meantime, the child had run back and gotten on the running board after the defendant had gotten into the car. It was thrown off the running board and injured. Suit was brought and a verdict was rendered in its behalf in the trial court.

The defendant in that case took precisely the same view that was taken by the defendant in the case at bar. He defended upon the theory that the child was a bare trespasser, and that after he "shooed him away with his cap" and the child apparently got away, no further duty devolved upon him other than not to wilfully injure the child. Special requests were presented to the trial court just as was done in this case, couched in almost the same language, and the trial court refused to so charge the jury, but charged that the duty of ordinary care under all the circumstances devolved upon the defendant. The case went to the Court of Appeals in Ohio and under the doctrine of the turn-table cases was reversed. It was taken to the Supreme Court of the State of Ohio, and there the Court of Appeals was reversed and the judgment of the lower court sustained. In the body of the opinion, the court had this to say:

"If the driver of this automobile, when he approached the car, had no knowledge that the child was on the car or in its immediate vicinity, obviously there would be no liability. But when he concedes that he drove the child first from the right running board, and again from the left running board of his car, would not these and other attending circumstances apprize the defendant that a child of that age acting under childish

572

instinct, and unaware of its peril, would make still another attempt to board the car? This actually did occur. The trial court was therefore not in error when it charged the jury upon the subject of the defendant using ordinary care under the facts disclosed.''

Again the court says:

"The distinction between the legal duty due uninvited persons in cases arising from the construction of the premises, and in those arising from their negligent operation is clearly made and discussed in Cincinnati H. & D. R. Co. v. Adler, 64 Ohio St., 183, 60 N. E., 205 . . .

There is an elaborate note under the case of Ziehm v. Vale, 1 A. L. R., 1384 and the question is further discussed in a note in 44 A. L. R., 434 where we find this statement by the editor:

"The tendency of the later cases would seem to indicate that the courts are requiring a higher degree of care on the part of the operators of automobiles towards children playing on, or in proximity to, their automobiles than was announced in the original annotation, particularly in those cases in which the driver had notice of the children's presence on or about the machine.''

The following cases more or less like the present case support the rule laid down in Ziehm v. Vale, 1 A. L. R., 1381.

In Oliver v. Abrigo, 241 S. W., 893, defendant's delivery truck was backing in yard where were two children. A little girl five years old caught on to the end gate and it came down. The driver said when he started backing the truck, the children were around the house. The court said:

"The jury was warranted from the testimony in finding that Higdon was familiar with the Abrigo's premises and knew that he had children who played in the yard and that it was the habit of the little girl to hang on the end gate of the truck when it came into the yard to make deliveries. Under the circumstances the appellant Higdon was bound to anticipate the presence of children in the yard and that they might come near the truck in their play and be thus exposed to danger. Nashville Lumber Co. v. Busbee, 100 Ark., 76, 139 S. W., 301, 38 L. R. A. (N. S.), 754. Such being the facts, it was a question for the jury to say whether Higdon exercised the care commensurate with the dangers he had to anticipate and the injuries that were likely to result to the appellee from the careless handling of his truck. There was testimony to sustain the finding that Higdon did not exercise such care as a reasonably prudent driver under the circumstances should have done.''

Lee v. Independent Dairy, 221 Pac., 309. In this case a three year old child was killed by a truck backed without warning required by ordinance, although the driver did say "look out." The court approved an instruction by the trial court to the jury in sustance to the effect that children have as much right in the street as the owner of an automobile. That the driver must anticipate the presence of children upon the public highway and must exercise reasonable diligence to avoid injuring them and in so doing is not justified in assuming that a young child will manifest the judgment and prudence of an experienced man.

A driver acting without authority, invited a boy to ride and the boy was holding on to side of truck attempting to climb on, when driver suddenly and carelessly caused truck to take a violent jerk. Held driver owed reasonable care to the boy. Stipetich v. Security Stove & Mfg. Co., (1920 Mo. App.), 218 S. W., 964.

Tupman's Adm'r v. Schmidt, 254 S. W., 199: Where defendant's truck driver testified that he lifted plaintiff's six year old boy from behind the truck and placed him on the side-walk, with a warning he was going to back the truck, that, after spending a short time in cranking his engine, he saw the boy was not where he had placed him, but did not look to see where he was and backed the truck over him, held to make it a question for the jury whether the driver had exercised reasonable care for the safety of the boy, though it unquestionably would have shown the exercise of reasonable care for the safety of an adult.

Where the question of negligence is one about which reasonable men might differ, it is a question for the jury.

Conduct in dealing with a normal adult which may be wholly free from negligence may become negligence in dealing with an infant who has not reached the age of discretion.

In the course of the opinion in the Tupman case, the court said:
"This court likewise in the case of K. C. Railway Co. v. Gastigneau's, Admr., 83 Ky., 119, laid down a similar rule in determining whether an infant of tender years should be treated as a trespasser. In discussing that question it said:

'One should exercise reasonable care to anticipate and prevent an injury to a child of such tender years as to have little or no discretion, although he may be technically a trespasser. His condition excuses his concurrent negligence. Humane considerations require such a rule. Thus one may incur liability for an injury to a child of tender years by leaving dangerous machinery where it is accessible to him, although there would be no liability to an adult or child of years of discretion under the like circumstances.' "

It would be an anomaly in reasoning to hold the owner of premises liable for the action of dumb machinery inadvertently exposed and not liable to think and act to avert visible danger or danger that should be seen.

Glinco v. Wimen, 88 W. Va., 509, 107 S. E., 198, is a case of a five year old child killed by a truck in backing. In sustaining the verdict for the plaintiff, the court says:

"The children were there playing about the car and in a position to be seen. The driver of the truck though differently located, had the same opportunity to note their presence and see and observe their danger that others had. Even though the children were holding on to the rear end of the truck and not readily observable from the driver's seat, the circumstances were such as to require him to be reasonably sure no one of them was in such a position of danger."

The head note also contains the ruling that in backing:

"It is incumbent upon the operator to exercise a high degree of care in order to safeguard children playing on or near the highway."

Counsel for defendant invokes the doctrine of our attractive nuisance cases. The contention is that the owner of premises owes no duty to a trespasser except not to injure him wilfully or wantonly; that there is no difference between an infant trespasser and an adult except that an attractive nuisance may operate as an invitation to a child and thus eliminate the element of trespass; that the coal cart in the present case was not an attractive nuisance. Foster-Herbert Cut Stone Co. v. Pugh, 115 Tenn., 688, therefore the decedent was a trespasser and there can be no recovery except for wilful injury.

The case of Stone Co. v. Pugh, certainly supports the contention that an ordinary vehicle is not an attractive nuisance, but cannot assist appellant any further. After delivering the load of stone the driver in that case invited the boys to ride, and was giving them a ride, the court said the driver had no authority to extend the invitation and in giving the boys a ride was not in and about his master's business. This could not have been said if before the stone was unloaded the driver in backing the wagon into position to unload the stone had backed it against or over the decedent. And if the driver had known of the boys playing around the wagon and had not exercised reasonable care the owner would have been liable. It could not be said that the driver of the coal cart driving toward the place to deliver the coal was not about his master's business and no such contention is suggested.

The court in the Stone Company case says the case was rested for plaintiff upon the contention that the wagon was an attractive

nuisance. No such contention is made in the present case so that neither of the questions upon which the case of Stone Co. v. Pugh was rested are involved in this case. The present case is therefore left to be determined upon the doctrine that the owner of a vehicle is responsible when the driver knew or should have known of the presence of very young children in position of danger, and did not exercise reasonable care to avoid inflicting injury.

Counsel for defendant evidently appreciate the difference between the case of a child attracted by some dangerous instrumentality on to premises where he had no right to be and injured without the knowledge of his presence by the owner of the premises, and the case of very young children playing where they have a right to be and where the only premises subject to trespass is a vehicle driven into their midst, by one who has no more right to be there than the children have. Counsel have therefore cited cases of drivers of vehicles and young children to support the contention of defendant. Before considering these cases, however, we wish to say the case of Ziehm v. Vale, 1 A. L. R., p. 1381, is not in conflict with our attractive nuisance cases. It simply holds that knowledge of the presence of infants, young children say five or under, trespasser: or not, under circumstances in which they are liable to be hurt puts upon the driver the exercise of reasonable care. If in the Whirley v. Whiteman case, 1 Head, 610, the moving cogs had been located in the mechanical privacy of the plant and therefore the young child, clearly a trespasser, yet if the owner of the plant or his agent knew or should have known of the presence of the infant trespasser, in danger and yet unable to estimate the danger, a new principal would be imported into the case and ordinary care must be exercised to safeguard the child. The note of distinction is sounded in the Ziehm case "between the legal duty due uninvited persons in cases arising from the construction of the premises and those arising from their negligent operation." Also between seeing and not seeing, being able to see and not being able to see the imminent danger to those incapable of measuring such danger.

The first case cited for defendant is Glowacky v. Sheffield Farms Co., 134 Atl., 674. In this case a boy of thirteen was running to get on a fast moving truck which did not check up to let him on. He succeeded in getting a momentary foothold then fell off and was injured. The court said there being no proof that he was invited to get on, he was a trespasser and no duty was owing him except to refrain from wilful and wanton injury. The court says:

> "There was an utter absence of proof that the driver saw the decedent or that he saw or knew that the decedent was standing on the running board."

In the absence of knowledge or circumstances from which the driver should anticipate the danger of decedent, the case is not in point.

Bruhn v. Fort Dodge Street Ry. Co., 192 N. W., 296, is an Iowa case involving the death of a child five years of age who had attached himself to the fender of a street car while the car was at rest and was killed when the car started. The court said:

"Manifestly, if Fallon (the motorman) knew that any person was in such position, whether trespasser or not, he would be guilty of actionable negligence if he failed to use reasonable care to protect him. Would he be equally liable if he failed to discover the perilous position of the trespasser? As already indicated, he was under duty to maintain a lookout. He would be chargeable with the duty of discovery of whatever such lookout would disclose. In the absence of any circumstance suggesting the necessity of special inquiry or investigation, he was not chargeable with other discovery than a faithful lookout would disclose. It is clear, in this case, that the injured person had so attached himself to the car that he was not discoverable to Fallon except by his leaving his working position and making a special search. No circumstances are disclosed which could have suggested to Fallon the necessity for such a special search.

"Innocent as the injured party was in this case and though sorrowful and heartrending the result, the measure of the duty of discovery of his peril, imposed by the law upon Fallon as motorman, was not different than it would have been if the injured person had been a responsible and wilful trespasser."

That case by implication is in line with the contention of plaintiff and the case of Ziehm v. Vale, supra. The court makes it clear that if any circumstances had suggested to the motorman that any child was clinging to the fender of the car, he would have been bound to search before starting. If there had been anything to put him on suspicion, trespass or no trespass, he would have been bound to exercise reasonable care. Suppose he had seen the child clinging to the car, had warned him off and had seen him run back several times, he would have been bound to look and search before starting.

Faggioni v. Weiss, 122 Atl., 840 (N. J.), holds that the driver of an automobile does not owe reasonable care to an infant riding in the car without invitation. The boy was twelve years old, but the decision is broad enough to apply to a child no matter how young. It is sufficient to say that this case is not at all like the class of cases relied on by plaintiff where the driver has reason to

know that the very young children playing around may be in danger.

Routt v. Look, 191 N. W., 557:

In this case a boy three and one-half years of age was injured by clinging on to a truck. The court says:

> "We can find no testimony in the case which supports a finding that the driver ever knew that Stephen was in this perilous position. The most that can be said is that he knew of the three boys who were standing by the telephone pole, two were riding on the fender in a place of comparative safety. While there are statements made by the boys to the effect that the driver saw Stephen, their testimony, considered as a whole, shows that he could not have seen him under the circumstances."

The court says also:

> "Considering the tender years of the plaintiff, if there was evidence tending to show that the driver knew of his presence upon the truck, the question of his duty under such circumstances would no doubt be a question for the jury. Ziehm v. Vale, 98 Ohio St., 306, 120 N. E., 702, 1 A. L. R., 1381 and cases cited in note."

And still further says:

> "This case must also be distinguished from cases where children have clustered about a truck which has stopped in a street. It is conceded here that at the time the driver started the truck all of the children were in a place of safety, one on the seat beside him and three standing near the telephone post some twenty or thirty feet away. Ziehm v. Vale, 98 Ohio St., 306, 120 N. E., 702, 1 A. L. R., 1381."

The court in Routt v. Look was very careful not to cast any doubt upon the cases relied on for plaintiff in the present case.

Thyssen v. Davenport Ice & Cold Storage Co., 112 N. W., 177:

In this case an eight year old boy was injured by one taking a block of ice from a delivery wagon. The court says:

> "There is nothing in the record to show that he knew or should have known of the presence of the boy in a place of danger."

This case has no application to the present case.

The last case cited for defendant on this point is United States Zinc & Chemical Co. v. Brett, 258 U. S., 268. In this case a pool of water was left in the basement of an abandoned plant. The water was clear looking but poisonous and two boys were killed by bathing in it. The court said there was no proof that the boys were attracted to the trespass by the water. That case does not bear upon the question involved in the instant case.

So far then, as the assignments go to the right of defendant to a directed verdict the question is, taking the evidence most strongly in favor of plaintiff, is it sufficient to sustain the verdict under the authorities discussed. It is not disputed that at least three children five years old or under, including the plaintiff's decedent, were playing around the coal cart showing a determination to swing on to it. After the obstructing wagon was drawn out of the way and the cart moved toward the rear of the yard, the Graves boy, at least, was swinging on to the cart. Mrs. Osborne says when the mule's head was turned to the north toward her she could see the boy's legs dangling below the body of the cart. Just about the time the driver swung the mule around facing north she heard Frank Henderson cry out "Lester get off that wagon." Counsel for defendant by persistent and skillful cross-examination led her to say this was at the instant of the cart striking the house, but she had said before:

"A. I heard Frank Henderson say 'Lester get off that wagon.'

"Q. 'Lester get off that wagon.' Who was he talking to? A. Lester Shook.

"Q. It was not little Elmo Graves? A. No.

"Q. And did Lester get off of that wagon? A. I don't know, I could not say. I stepped to the door and they were out to the front then.

"Q. When he said 'Lester get off the wagon' you stepped to the door? A. Yes, sir."

That is, after she heard Frank Henderson say "Lester get off that wagon" she stepped to the door, of the porch we take it, and this before the accident and Lester Shook was not then on the cart. If she had time to step to the door after Frank called out, certainly the driver had time to take warning and avoid the gross carelessness of backing into the house. The jury was perhaps justified in finding that the decedent dropped off the cart just before it struck the house and was standing on the ground when killed, but if this theory be not tenable, there is evidence to support the theory that the driver of the cart knew or had reason to know that the decedent was in danger from the cart, and instead of taking reasonable care, he was gratuitously negligent in backing against the house which was the proximate cause of the killing. To say the least of it this backing into the house required some explanation. Grudberg v. Ehret, 140 N. Y. Supp., 379.

Assignments 4 to 7 inclusive challenge the action of the trial court in charging the jury that if the driver knew or in the exercise of reasonable care should have known of the presence of the child on the truck or in danger, that the obligation of ordinary and reasonable care was imposed upon the defendant. The defendant

insisted on the trial court telling the jury that the decedent was a trespasser, or if the jury found that he was a trespasser, that the defendant was liable only for wilful and wanton injury. We think there was no error in the charge.

The eighth assignment is that it was error to permit the jury to take to the jury room, without the consent of the defendant, the plat which was introduced in evidence showing the driveway and back yard of the Henderson premises. There was not a disputed fact depending upon this diagram. Its only purpose was to enable the jury to follow and understand the testimony. It served this purpose for both sides. It had no probative force. Conceding that it was technical error to allow it to go to the jury room, we cannot see how it could have influenced the verdict. Therefore, under Chapter 32, Acts of 1911, this court should not reverse for this reason.

Since the argument of the present case, counsel for appellant has furnished the court with a copy of the opinion of the Court of Civil Appeals (1920) in case of Tucker v. Bennett as sustaining the contention that a party is not saved from being a trespasser by his minority.

This case can have no application in the present case. James Tucker was between thirteen and fourteen years of age, whereas, the doctrine upon which we rest the present case refers to infants of about one-third that age. Then the essence. of the rule applied in the present case is that the driver of the vehicle knew or had reason to know that the very young children were in a position to be injured by his vehicle, especially when backing. In the Tucker case the court says:

> "There is no proof to show that the defendants knew that this boy was on the premises at the time of the explosion or shortly prior thereto. Charley Burns, his cousin, had seen him a short time before the explosion, sitting on the railroad right of way near the railroad trestle."

Then again, in the Tucker case the court said it was not shown that the employer of defendant was guilty of any negligence and no one knew what caused the explosion. In the present case the driver was inexcusably negligent in backing against the house. when proof shows he had ample room in the back yard to turn and back to unload the coal without backing against anything and it cannot be disputed that this backing against the house killed the boy. Besides, in the present case as we have said, the driver had reason to know of the dangerous position of the decedent and should have exercised reasonable care. This question was left to the jury and the verdict approved by the court should not be set aside.

580

All assignments of error are overruled and the judgment of the lower court is affirmed.

Owen and Senter, JJ., concur.