BESSIE LAMBERT, ADMINISTRATRIX AD PROSEQUEN-
DUM OF WILLIAM T. LAMBERT, DECEASED, v. M. SAT-
SKY TRUCKING COMPANY, IMPLEADED, ETC.

Argued May 6, 1937—Decided August 9, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the plaintiff, *William Bruder* (*John F. Ryan*, of counsel).

For the defendant, *Harry Levin.*

The opinion of the court was delivered by

PARKER, J.    Plaintiff's intestate was struck and fatally injured by an automobile owned and driven by the defendant Anderson, who was a truck driver for the Satsky company, and was making a delivery of several cases of soft drinks in behalf of that company.    The present action was brought against both, and resulted in a verdict against both; but the present application is by the Satsky company alone.    On the merits, the claim for that company is that Anderson at the time had deviated from his employment to such an extent as to relieve his employer from responsibility for his acts; and in addition it is claimed that the verdict of $11,500 is excessive.    There was an application to the trial court for a rule to show cause, which was denied by that court, and is repeated here pursuant to rule 123.    At the argument it was stipulated that if this court should conclude to grant a rule, it may proceed to decide it on the merits.    We conclude that the rule should be granted, and this brings us at once to the second phase of the matter.

Anderson, as has been said, was a truck driver for the Satsky company, which appears to be a delivery corporation under contract with certain producers or selling concerns, for the delivery of their output.    He was called as a witness for plaintiff, and again for defendant.    He reported at the Satsky garage in Newark at four A. M., took out truck No. 10, drove with a helper to the A. & P. warehouse, got his load, and drove to Roselle, where the truck stalled in the wet snow.    He called up the garage, and was told to call again if the truck would not start.    He did call again, and two other employes, one named Bob Banks and another man

nicknamed Sam, came to his aid with No. 16. After failure to start No. 10, the load was transferred to No. 16, and Anderson finished his deliveries with No. 16 and drove back, arriving at the Twelfth avenue garage at three-thirty. Katz, the foreman or superintendent, told Anderson he had sent a man to Roselle who could not find No. 10, and Anderson said he would show him where it was. So Anderson got into his own sedan, parked for the day at the truck garage of his employer, took Sam to Roselle and stopped at truck No. 10 where it was stalled.

Up to this point it is clear that Anderson was acting as the servant of Satsky and on its business by proper authority. What follows is claimed to have been unauthorized, and indeed a forbidden "deviation" for the result of which Satsky company says it is not liable. While Anderson was watching the other two working on the empty No. 10, Satsky truck No. 17 arrived with a load of soda, driven by a man named O'Beirne, who said he was late, and had an out of the way delivery of five cases at Kenilworth which would take time, and if Anderson could make that delivery for him, he could handle the rest of his load. So Anderson said he would take the Kenilworth delivery, took the five cases off No. 17 and put them in his sedan, and was on his way to Kenilworth when the accident happened.

Katz testified, and we think without contradiction, that the orders were definite and positive against delivering in anything but the company trucks; and for the reason that the Satsky insurance covered only those trucks. We think there can be no question but that Anderson was on his employer's business at the time, but was doing it in a forbidden manner. Does this absolve the master? It is true that Anderson drove "Sam" to Roselle by authority of Katz, but that authority went no farther; and indeed, the transportation of "Sam" was not a "delivery."

In *Driscoll* v. *Carlin*, 50 *N. J. L.* 28, the servant had put lumber on the sidewalk as ordered, but had left it there against orders. The master was held liable. In *Rhinesmith* v. *Erie Railroad Co.*, 76 *Id.* 783, the servant put a torpedo on

the track under the rules, but at a station against the rules. In *Klitch* v. *Betts,* 89 *Id.* 348, a dentist's assistant extracted a tooth contrary to orders. Judge Williams, writing for the Court of Errors and Appeals, quoted from *McCann* v. *Consolidated Traction Co.,* 59 *Id.* 481, 487, "where a servant is acting within the scope of his employment and in so acting does something negligent or wrongful, the employer is liable, even though the acts done be the very reverse of that which the servant was actually directed to do."

But it seems to be the rule that where the servant, even in execution of his general duty, uses an instrumentality not expressly or impliedly authorized by the master (or particularly if such use be forbidden, as in this case) and damage results, the master is not liable. A number of decisions in other jurisdictions are cited. In this state we have *Wilson* v. *Pennsylvania Railroad Co.,* 63 *N. J. L.* 385, in which the servant, provided with a pushcart, made use of a horse and wagon. In *Glowacky* v. *Sheffield Farms Co.,* 4 *N. J. Mis. R.* 849; 134 *Atl. Rep.* 674; *affirmed,* 103 *N. J. L.* 697; 137 *Atl. Rep.* 916, the servant making deliveries used a forbidden instrumentality, viz., a boy, who was himself injured. A judgment for plaintiff was reversed, the appellate court holding the master not liable on the ground of disobedience of instructions not to use the aid of boys. These cases appear to mark a line of distinction pertinent to the present case, and indicate that there should have been a nonsuit or a direction for defendant.

In view of this result, it is unnecessary to deal with the matter of damages at length, but it may be as well to note that on that point the only proof was the age of deceased, the average life expectancy of a man of that age, and evidence that his income as an employe in a drug store varied from $15 to $35 a week. There was no evidence of joint expectancy of himself and his wife, and none as to the portion of his pay devoted to the support of his family. It is true that the life tables are permissive rather than required, as evidence in these death cases; but there should be some evidence to show, even in a general way, what part of the income was devoted

to the dependents, as for example in *Barnett* v. *Atlantic City Electric Co.,* 87 *N. J. L.* 29, and *Bowes* v. *Public Service Railway Co.,* 94 *Id.* 378. The actuarial view of the matter is quite fully set out in *Danskin* v. *Pennsylvania Railroad Co.,* 83 *Id.* 522. ' But in view of our result touching the matter of liability, we need go no farther on the matter of damages.

The verdict for plaintiff will be set aside as to the Satsky Company and a new trial ordered.