# CHARLESTON.

TONY GLINCO. ADM'R v. W. E. WIMER *et al.*, PARTNERS, ETC.

Submitted April 12, 1921.   Decided April 26, 1921.

1. AUTOMOBILES—*Vigilance and Care Required of Operator of Automobile Greater in Respect to Children.*

   The vigilance and care required of the operator of an automobile vary in respect of persons of different ages or physical conditions. He must increase his exertions in order to avoid danger to children, whom he may see, or by the exercise of reasonable care should see, on or near the highway. More than ordinary care is required in such cases.   (p. 512).

2. SAME—*In Backing Automobile Driver Must Exercise High Degree of Care to Safeguard Children Playing on Highway.*

   The law does not forbid the backing of an automobile on a public street, unless to do so will interfere with or retard traffic, but in effecting the maneuver it is incumbent upon the operator to exercise a high degree of care in order to safeguard children playing on or near the highway.   (p. 513).

3. SAME—*Exercise of Requisite Degree of Care by One Backing Automobile in Street Generally for Jury.*

   Whether he has exercised the degree of care rendered necessary by the facts and circumstances of the case generally is for the jury to determine.   (p. 513).

·4.  SAME—*Finding of Negligence of Driver of Automobile Back-
        ing it Without Warning and Injuring Child Playing in
        Street Held Justified by Evidence.*
    Where a child, playing in a frequented street just behind a
    standing automobile, and easily seen, is injured by the sudden
    backing of the machine without warning and without a care-
    ful inspection by the driver to ascertain his presence in a
    place so obviously dangerous, the jury is justified in charging
    the operator with negligence. (p. 513).

 5.  TRIAL—*Interrogatories Not Raising Material Issues and Not
        Controlling on Any Verdict Properly Refused.*
    The trial court properly may decline to propound interroga-
    tories which do not raise material issues and will not be
    controlling upon any verdict the jury may return. (p. 514).

Error to Circuit Court, Tucker County.

Action by Tony Glinco, administrator, against W. E. Wi-
mer and others, for wrongful death. Judgment for plain-
tiff, and defendants bring error.

*Affirmed.*

*Samuel T. Spears,* for plaintiffs in error.

*J. W. Harman,* and *R. D. Heironimus,* for defendant in er-
ror.

LYNCH, JUDGE:

Plaintiff's intestate, a boy of five and a half years old, died
October 9, 1919, from injuries inflicted upon him about two
o'clock of the preceding afternoon, or within 24 hours after
he was hurt. His death resulted from the impact of a motor
truck owned by defendants    then engaged in business as
partners, part of such business being the receipt· of ship-
ments from the local agent of an express company at Davis
and their delivery to the intended recipients residing in the
town. Arthur Bishop, then 19 years of age, was the operator
of the truck, and with him on the occasion of the accident
were U. G. Lanom and ——— Litz, the latter of whom was
assisting Bishop in making deliveries, but whether Lanom
and Litz were in the employment of the defendants does not
appear. Though at the time of the trial Litz was at Home-

stead, Pennylvania, defendants did not summon him or take his deposition.

Each of the two wheels on the same side of the truck passed over the lad either while his body was prostrate on the ground or in a sitting posture, causing a complete fracture of the left leg bone between the knee and ankle joint, a rupture of the intestines two and a half to three inches in length, and a serious disturbance of the mesenteric or membranous lining and folds which invest the intestines and their appendages and connect them with the dorsal wall of the abdominal cavity. His inability to withstand the shock bears silent evidence of the gravity and seriousness of the injury thus inflicted upon his body. At the time of the occurrence Bishop was in the immediate charge and control of the truck and with Litz sat in the cab at the front and Lanom on bags of feed in the rear end of the truck. The cab, designed to protect the driver from the inclemencies of weather conditions, was equipped on the back and on the right and left sides with curtains partially glazed in order to enable the operator to observe and prevent danger to persons or property by collision while on the public highways, and on the day of the accident they seem to have been raised and folded, thus giving a clear and unobstructed view in every direction.

The accident happened on Kent Avenue in Davis nearly in front of the residences of A. L. Wheat on the right side of the avenue as the truck approached it from Fifth Street and of Mrs. Rachel Landis on the other side. Bishop stopped the truck at that point for the purpose of deliveries, and he and Litz did deliver, to the Wheats at their residence a shipment of two bushels of apples intended for some member of the family. That service required from 3 to 5 minutes, and when performed they resumed their seats in the cab theretofore occupied by them, and as the truck had in the meantime stood diagonally across the street, Bishop in order to return to Fifth Street at first started up the avenue, then shifted the gear into reverse and drove backwards down the grade and in doing so ran over the child, thereby inflicting the injury culminating in death.

Defendants' agent, Bishop, denies knowledge of the presence of the child in the avenue or in dangerous proximity to the truck and that he saw him at any time until after he had backed over his body. This statement is expressed in language more favorable to defendants than that used by Bishop and his associates in their testimony. In answer to questions propounded by counsel they seemed content to reply negatively without assigning any substantial reason for their failure to see the boy and one or two other children of about the same age and size, his companions, at the same time and place. Bishop, however, did say that before moving backward he looked towards the rear and, though he could and did see within a few feet of the end of the truck and beyond, discovered no one behind it anywhere.

Evidently the jury gave scant credence to this testimony, and it may be said now that, considered in connection with the evidence of Mrs. Landis and Robert Hitchcock, the final result of the trial is justified and fully warranted. These witnesses, Mrs. Landis from the dining room window of her home on the avenue and Hitchcock from its junction or intersection with Fifth Street, a distance of 150 to 200 feet, saw two or three children near the scene of the accident, part of the time playing in a sand pile on an elevation above the drive way, part of the time on the avenue before and behind the truck, while Bishop and Litz were at the Wheat residence and after their return. Lanom remained on the truck in the meantime. From what Mrs. Landis saw and testified to, the children saw Bishop and Litz as they returned to the truck to resume performance of the duties assigned to them. Although Hitchcock did not furnish much detailed information of the conduct and acts of the children, he too saw them at the same time and place, though neither he nor Mrs. Landis actually witnessed the accident, the latter because she turned her face away to avoid seeing the child crushed, as to her seemed inevitable from the position he occupied, the former because he and the team he was driving had moved out of view on Fifth Street.

If the jury believed the uncontradicted and unimpeached

testimony of these two witnesses, they were warranted in assuming that defendants' agent was grossly negligent in that he failed to use that high degree of diligence and care exacted by law for the protection of children on highways and streets where they may be expected to be. Of course there cannot be the slightest doubt that plaintiff's intestate was in the street or that, had the agent been diligent and careful, he ought to have seen what the others saw and observed under no better circumstances. The children were there playing about the car and in a position to be seen. The driver of the truck, though differently located, had the same opportunity to note their presence and see and observe their danger that others had. Even though the children were holding onto the rear end of the truck and not readily observable from the driver's seat, the circumstances were such as to require him to be reasonably sure no one of them was in such a position of danger.

It is scarcely necessary to enter upon a prolonged discussion of the question of liability resting upon the owners and operators of high-powered vehicles such as motor trucks and automobiles. *Deputy* v. *Kimmell,* 73 W. Va. 595, 51 L. R. A. (N. S.) 989, Ann. Cas. 1916 E. 656, 8 N. C. C. A. 369, and notes, deal with facts and circumstances having some resemblance or likeness to those dealt with now. There it is said: "The diligence and care required of the operator of an automobile vary in respect of persons of different ages or physical conditions. He must increase his exertions in order to avoid danger to children, whom he may see, or, by the exercise of reasonable care, should see, on or near the highway. More than ordinary care is required in such cases." The reckless disregard of the lawful rights of travelers using ways maintained at public expense for the accommodation of all persons alike, who are lawfully using and entitled to use them, has become a public menace, if not a public nuisance. Chauffeurs, even owners, not unfrequently act as if they and they alone have an exclusive right to be upon the thorofares devoted to general use. Instances of apparently wanton destruction of life and property or both by such negligent indifference occur with alarming frequency. More deaths

and bodily injuries, it is believed, result from the reckless operation of motor-driven vehicles on public roads than from railroad collisions. Railroad crossing warning, common law and statutory rules and regulations intended for the safety of travelers on the highways, whatever may be the instrumentality employed, are disregarded and ignored without manifesting the slightest interest in the conseqeuences that may and often do follow such indifference. Operators, whether owners or their agents, swish their machines around and across street corners and intersections without apparent care for life or property values. This heedlessness manifests itself perhaps with no less persistence in the backward movements of such vehicle. Such movements at high speed embarrass even the most careful and prudent adults and maim and kill them as well as children.

The law does not forbid the backing of a vehicle of any kind, and if the maneuver is effected by the driver in the exercise of due care, a jury properly may in some cases find him not guilty of negligence. *Sheldon* v. *James*, 175 Cal. 474, 2 A. L. R. 1493. But unless it appears from the facts and circumstances developed upon the trial that defendant or his agent clearly was without fault, the question of negligence is for the jury to answer. Huddy on Automobiles (5th Ed.) § 440; note, 2 A. L. R. 1499, and cases cited. That of course is the general rule and it is equally applicable in cases of this kind. The speed of the truck movement, first forward then backward within a short period of time, probably within a few seconds, is not shown, and it does not appear with certainty that Bishop gave any warning. He was not certain whether he did or not, though he "believed" he did. Lanom, though sitting on the sacks of feed in the truck at the time, did not recall any warning of the movements, though he testified that Bishop looked back through the cab window to see if any one was behind the car. If Bishop, in the forward and reverse movements of the truck, emulated the example of other drivers, as the jury may have thought he did, his negligence, if due to that cause alone, warranted the verdict. A chauffeur who backs his machine must always be alert and careful to

see and avoid the probable result of such use of the highways. There is no lawful monopoly of the ways of travel by a favored few, whatever may be the instrumentality employed.

The refusal of the court to propound to the jury interrogatories requested by defendants was not erroneous. Answers to them, however made, would not have controlled the verdict they agreed upon. They did not raise a material issue either in favor of or against defendants.

We have examined the instructions, both those given and refused, and find no such error in them, when properly considered and interpreted, as would justify a reversal of the judgment. Number 3, requested by defendants and given, stated the case proved more broadly in their favor than they were entitled to in our opinion.

Our conclusion, therefore, is to affirm the judgment.

*Affirmed.*