[Civ. No. 5291. First Appellate District, Division One.—April 7, 1927.]

VINCENT McMANUS, Respondent, v. ARNOLD TAXI CORPORATION (a Corporation) et al., Defendants; L. A. ARNOLD, Appellant.

[1] Negligence—Personal Injuries—Coasting Automobile Backwards—Evidence—Findings.—In this action for damages for personal injuries to plaintiff, a child five years of age, the evidence showing that defendant, after stopping about forty feet beyond an intersection, allowed his automobile to coast backward, on the wrong side of the street, without warning, and in such manner as to strike plaintiff, knocking him down, and running over him, causing severe injuries, was sufficient to justify the conclusion of the trial court that defendant was not operating said automobile in a careful manner with due regard for the safety and convenience of pedestrians; and plaintiff was not required to anticipate that said automobile would be thus backed just after passing.

[2] Id.—Due Care—Looking to Rear Before Backing—Rejection of Evidence.—In such action, testimony of both defendant and his wife, who was sitting in the front seat beside him, that they looked to the rear before backing up, and that they did not see plaintiff until after both wheels of the automobile passed over his body, did not establish as a matter of law that defendant exercised due care in backing said automobile, where such evidence was given in support of specific allegations of the same import in defendant's answer, which the trial court expressly found was untrue, thereby indicating that the court did not accept as true the testimony in question.

[3] Id. — Exercise of Ordinary Care — Evidence — Determination of Trial Court.—In such action, assuming the trial court ac-

1. See 2 R. C. L. 1183.
3. See 3 Cal. Jur. 842; 19 Cal. Jur. 729.

cepted as true the testimony that defendant and his wife both looked before backing up, but did not see plaintiff until both wheels of the automobile had passed over his body, did not establish as a matter of law that defendant exercised due care so as to relieve him of liability, because the question of the exercise of ordinary care is one of fact and must be determined from all the conditions and circumstances surrounding each case.

[4] Id.—Extent of Injuries—Excessive Damages.—In such action, the evidence having shown, beyond question, that plaintiff sustained very severe injuries, that as a result of them he was compelled to undergo two major surgical operations, and endured excruciating pain and suffering, and that his health was doubtlessly permanently injured, the appellate court could not say that the award of damages slightly in excess of eleven thousand dollars was excessive.

[5] Id. — Medical and Hospital Expenses — Payment by Parent — Excessive Judgment.—In such action, medical and hospital expenses were improperly included in the judgment, where such action was brought on behalf of the injured minor, and the evidence showed that his father incurred all of the medical and hospital expenses, and paid some of them, and the obligation to pay the balance was not legally enforceable against the child personally, nor against his estate—he not being under guardianship.

[6] Id.—Contributory Negligence of Parent—Elimination of Defense—Allowance of Expenses to Child.—In such action, where defendant pleaded in his answer that the parent contributed to the child's injuries by negligently permitting it to be and play in a place of danger, but defendant was deprived of that defense, when it was eliminated from the case on demurrer, the amount of the medical and hospital expenses incurred or paid by said parent could not legally be allowed to the child as an element of damage under the doctrine of waiver or emancipation, arising from the fact that the parent appeared as guardian *ad litem.*

[7] Id.—Striking Out of Special Defense—Ineffective Finding.— In such action, the separate defense relating to the contributory negligence of the parent having been stricken from the answer, the finding of the trial court that such defense was not true was of no force or effect.

---

(1) 42 C. J., p. 1152, n. 21, p. 1236, n. 37. (2) 42 C. J., p. 1245, n. 29. (3) 42 C. J., p. 881, n. 93. (4) 4 C. J., p. 872, n. 19; 17 C. J., p. 1100, n. 20. (5) 31 C. J., p. 1115, n. 71. (7) 38 Cyc., p. 1970, n. 7.

4. Excessiveness of verdict for injuries not resulting in death, note, 40 A. L. R. 1230. See, also, 8 Cal. Jur. 838; 8 R. C. L. 675.

APPEAL from a judgment of the Superior Court of Los Angeles County. Stanley Murray, Judge Presiding. Modified and affirmed.

The facts are stated in the opinion of the court.

Joe Crider, Jr., and John C. Miles for Appellant.

Swaffield & Swaffield for Respondent.

KNIGHT, J.—Plaintiff, by his father as guardian *ad litem*, sued the above-named defendants to recover damages for personal injuries sustained by him as a result of being run over by an automobile driven by defendant L. A. Arnold. The action was tried before the court sitting without a jury, and judgment was rendered against the defendant Arnold alone, from which judgment he has appealed.

Section 20 (a) of the Motor Vehicle Act in force at the time of the accident read in part as follows: "The driver or operator of any vehicle in or upon a public highway shall drive or operate such vehicle in a careful manner with due regard for the safety and convenience of pedestrians . . . and wherever practicable shall travel on the right hand side of such highway . . . On all occasions the driver or operator of any vehicle in or upon any public highway shall travel upon the right half of such highway unless the road ahead on the left hand side is clear and unobstructed for at least one hundred yards ahead and in all cases while crossing an intersecting highway"; and section 12 of said act required that every person operating a motor vehicle shall sound a "bell, gong, horn, whistle, or other device whenever necessary as a warning of danger, but not at other times, or for any other purpose." (Stats. 1919, p. 215, and Stats. 1915, p. 405.) [1] The complaint herein alleged and the trial court found that respondent's injuries were caused by the "careless, negligent and reckless operation of said automobile," and as grounds of appeal appellant urges first that the evidence is insufficient to sustain said finding.

The essential facts appearing in the record in support of the finding are as follows: Respondent was five years old at the time he was injured. The accident occurred about noon on September 2, 1921, on Orange Avenue, in a sparsely set-

tled neighborhood just outside of the city limits of the city of Long Beach. Orange Avenue runs north and south and is intersected by Augusta Street, which runs east and west. The entire width of Orange Avenue at the scene of the accident was forty feet, a strip about twenty feet wide in the center thereof being laid with an oiled macadam, which was in an uneven condition; and on each side of said avenue there was a row of trees, those on the east side being about eighteen or twenty feet apart, and measuring from fifteen to twenty-four inches in diameter, the branches of some of them extending to within five feet of the ground.

Appellant, accompanied by his wife, who was sitting in the front seat of the automobile with him, was visiting the locality mentioned for the purpose of viewing a burning oil well located at Signal Hill, some distance away. He was driving a Cadillac touring car with a left-hand drive, and was traveling north on the east side of Orange Avenue. Upon reaching a point on said avenue about forty feet beyond the northerly line of said intersecting street, he stopped the automobile, allowing the engine to run; but the view of the burning well from that point being somewhat obscured by the trees, he concluded to obtain a better view by going east on Augusta Street. Instead of proceeding forward and turning around to reach his objective, he disengaged the clutch of the automobile and, with the engine still running, allowed the automobile to coast backward, downgrade, on the east side of Orange Avenue, his purpose being to roll backward on Orange Avenue across the intersection far enough to allow him to turn east on Augusta Street. While attempting to execute this maneuver and after coasting about halfway to the corner, the rear left fender of his automobile struck respondent on the shoulder, knocking him down, and both wheels on the left side of the automobile passed over his abdomen, with the result that he was severely injured.

As to the boy's movements immediately preceding the accident, his mother testified on cross-examination by counsel for appellant that while on the way to the hospital in appellant's automobile the boy told her that he saw appellant's automobile as it passed up Orange Avenue; that he was standing "by the trees," and when the automobile stopped up the street, "a distance away from him," he thought the

people in it were going to get out of the machine and enter the adjacent property where his family usually bought milk, and that consequently he would be able to run across the street; but that while attempting to do so the machine "backed on" him, knocking him down. With reference to the question as to whether respondent could be seen from the street at the time appellant's automobile passed up Orange Avenue, Robert Drum, twelve years old, testified that immediately before the accident he was standing near the opposite (northwest) corner of said streets fixing his "coaster"; that as appellant's automobile went up Orange Avenue he saw respondent between the trees and close to the curb throwing dirt in the air; that as he proceeded down the street on his "coaster" his attention was again directed to the automobile by hearing appellant's wife "holler: 'Stop! You are running over something,'" and, looking around immediately he saw the front wheel of appellant's automobile, which was then backing "fast" downward, toward the Augusta Street intersection, passing over respondent's body. Drum's testimony as to the outcry made by appellant's wife was corroborated by certain admissions which respondent's witnesses claim appellant and his wife made to that effect shortly after the accident happened, and that appellant furthermore stated that "all amends and everything" in his power would be done for the child "and that all expenses and everything" would be taken care of by him. Other evidence was adduced on behalf of respondent showing that no warning of any kind was sounded by appellant before he started to back the machine nor while it was proceeding backward, and that the engine thereof ran quietly.

We are of the opinion that the foregoing evidence was sufficient to justify the conclusion reached by the trial court that appellant was not operating said automobile in a careful manner with due regard for the safety and convenience of pedestrians; and that therefore the finding upon the question of negligence must be sustained under those authorities holding in substance that where one passing several feet back of a standing automobile is injured by reason of the sudden backing of the machine, without warning, an inference that the driver is negligent is justified (*Lee* v. *Independent Dairy*, 127 Wash. 622 [221 Pac. 309]; *Glinco* v. *Wimer*, 88 W. Va. 508 [107 S. E. 198]; *Oliver* v. *Weaver*,

72 Colo. 540 [212 Pac. 978]; *Enstrom* v. *Neumoegen,* 126 N. Y. Supp. 660; *Suddarth* v. *Kirkland Daley Motor Co.,* (Mo. App.), 220 S. W. 699; *Wirth* v. *Burns Bros.,* 229 N. Y. 148 [128 N. E. 111]; Huddy on Automobiles, 7th ed., sec. 528; Berry on Automobiles, 4th ed., sec. 413), and that such person need not anticipate that an automobile which has just passed him will be backed just after passing. (*Westervelt* v. *Schwabacher,* 104 Wash. 418 [176 Pac. 545].)

[2] Appellant testified that before he started to back his automobile he looked to the rear on the left (west) side, and while the car was rolling backward raised in his seat, kept his hands on the wheel, and looked to the rear over his right shoulder and through the glass in the rear curtain of the automobile; and his wife testified that about the time the automobile came to a stop beyond the intersection, and before it started backward, she looked to the rear on the right-hand side, but did not continue her observation in that direction during its retrograde movement; and both testified that they were unaware of the boy's presence until after both wheels of the automobile had passed over him. Appellant contends that the foregoing testimony was sufficient to establish as a matter of law that he exercised due care in backing said automobile (*Sheldon* v. *James,* 175 Cal. 474 [2 A. L. R. 1493, 166 Pac. 8]; *Hahn* v. *Graham Co.,* 148 La. 55 [86 South. 651]), and that since neither the single act of backing a motor vehicle on the public highway nor the mere fact of driving on the left-hand side thereof constitutes negligence *per se* (*Sheldon* v. *James, supra; Hagenah* v. *Bidwell,* 46 Cal. App. 560 [189 Pac. 799], he cannot be held responsible for the accident.

The testimony relied upon, however, was given in support of specific allegations of the same import made in paragraph I of the second separate defense pleaded in the answer, which the trial court expressly found were not true. It would therefore appear that the trial court did not accept as true the testimony alluded to. [3] But even assuming in the face of the findings that it did, the facts testified to would not necessarily establish as a matter of law that appellant exercised due care so as to relieve him of liability, because the question of the exercise of ordinary care being one of fact must be determined from all the conditions and circumstances surrounding each case (*Noonan* v. *Leavitt,* 238 Mass. 481 [131

N. E. 297]; *Duggan* v. *Forderer*, 79 Cal. App. 339 [249 Pac. 533]), and, therefore, the ultimate question of fact remained for the trial court to determine whether the attempt by appellant, after proceeding up the street and stopping, to back his automobile across said intersection, on the wrong side of the street, without warning, for the purpose of turning into and proceeding easterly along said intersecting street, instead of pursuing a forward course, turning around and traveling on the right-hand side of the street, as ordinarily would be done, was an act of carelessness. If it was not, then the further question of fact arose as to whether the execution of such maneuver was attended by the exercise of ordinary care and with due regard for the safety of pedestrians using the street. Both of these questions of fact were resolved against appellant and we are satisfied that upon both propositions the trial court's conclusions are supported by the authorities hereinabove cited.

The facts of the instant case are materially different from those of *Sheldon* v. *James, supra,* and *Hahn* v. *Graham Company, supra,* upon which appellant strongly relies. In the former the driver was in the act of backing his automobile into a parking space next to the curb on the right-hand side of one of the congested streets of San Francisco, and in doing so struck an adult pedestrian who attempted to cross the street from the opposite side, in the middle of the block, by pursuing a long diagonal. He did not observe the backing automobile, although, while it was being backed upgrade, as the opinion states, it made "an extremely loud and raucous noise sufficient to attract the attention of the people on the opposite side of the street, and such as should have attracted the attention of the plaintiff before he placed himself in a place of danger." The court said: "If, then, under these circumstances, he did not look, the jury was justified in concluding that he was negligent in not having looked." In the other case, *Hahn* v. *Graham Company, supra,* the driver of a truck went upon an unpaved street, which was in bad condition, and, becoming stalled, "was forced to back his truck to the street behind him." While backing slowly a child four years old jumped across an open ditch on the side of the road, and, according to the testimony of the only witness who saw the accident, "ran into the

front wheel of the truck," and was injured. It is apparent from the facts stated that neither case is in point.

[4] Damages were awarded in the sum of $11,102.80, and appellant contends that the amount is excessive. The evidence shows, beyond question, that the boy sustained very severe injuries, that as a result of them he endured excruciating pain and suffering, and that his health is doubtless permanently impaired. Two major surgical operations were performed upon him. Upon opening the abdominal cavity the first time it was found that the pyloric end of the stomach had been ruptured for about two and one-half inches so that the food contents had been spilled in the peritoneal cavity. The appendix was "ballooned out," like it had been put to a considerable stretch, necessitating its removal. His condition became gradually worse, and about a week afterward the abdominal cavity was again opened. A large abscess was found extending as high as the diaphragm, in behind the liver, the abscess containing about a quart of pus. His treatment in the hospital extended over a period of two months, during most of which time the affected intestinal parts were drained with large tubes inserted in both sides and extending clear around to the back of the abdominal cavity. Although at the time of the trial of the action respondent was able to run about and play with other children, the medical testimony shows that his injuries have resulted in weakening the abdominal walls so that he will likely suffer in the future from hernia and adhesions; and notwithstanding that the rupture of the stomach has apparently healed, his intestinal absorption and digestion will probably be limited to a certain degree. "It is only when the award is so grossly disproportionate as to shock the sense of justice and indicate that the verdict was the result of passion or prejudice, that the court can set it aside as excessive." (Averdieck v. Varris, 63 Cal. App. 495 [218 Pac. 786]; Harrison v. Sutter St. Ry. Co., 116 Cal. 156 [47 Pac. 1019]; Martin v. Shea, 182 Cal. 130 [187 Pac. 23].) Under the foregoing rule it cannot be fairly said that the award herein is excessive.

[5] Evidence was admitted over appellant's objection establishing the amount of medical fees and the cost of hospitalization and medical supplies incurred in the treatment of respondent's injuries, the total amount of which, the

findings show, was included in the award of damages.    Part of the cost of the medical supplies, amounting to approximately $100, was paid by respondent's father, but the balance remained unpaid at the time of the trial.    Bearing in mind that the action was not brought by the parent, but was brought by the child to recover damages for the injuries personal to the latter, appellant contends that the child may not recover the expenses paid or incurred by his parent, even though the same were paid or incurred on behalf of his child, for the reason that the parent and not the child is primarily liable therefor; and that therefore the inclusion of the amount of those expenses in the award of damages was erroneous.

In *Durkee* v. *Central Pac. R. R. Co.*, 56 Cal. 388 [38 Am. Rep. 59], which was an action for damages brought by the parent wherein he sought to include in the measure of damages the element of pain and suffering experienced by his son, the court said: "When the action is brought by the parent, loss of services, medical attendance, expenses of nursing, and the like are matters to be considered by the jury, and in such cases compensation is the rule . . . but when the action is brought on behalf of the child, there are other separate and distinct elements of damages.    The child recovers, not for loss of time or service or medical attendance or expenses of curing, but for the injury personal to himself, such as pain and suffering, both physical and mental, disfigurement, etc."

The foregoing statement of the law is in complete harmony with the decisions of other jurisdictions, which hold generally that where the injured child is living with and is being supported by the parents, thereby legally entitling them to its custody and the benefit of its service, and consequently charging them primarily with responsibility for its maintenance, including the payment of any expenses reasonably and necessarily incurred in the treatment of injuries tortiously inflicted upon the child, for the recovery of which expenses they are given a right of action against the tortfeasor, said expenses do not constitute an element of damage accruing to the child which it may recover in an action brought in its own name and for its own benefit.    (See Sedgwick on Damages, sec. 226f, and 4 Sutherland on Damages, sec. 1250, and cases cited therein; also, *Chicago & A. R.*

*Co.* v. *Lammert,* 12 Ill. App. 408; *Butler* v. *Metropolitan Street R. Co.,* 117 Mo. App. 354 [93 S. W. 877]; *Tucker* v. *Buffalo Cotton Mills,* 76 S. C. 539 [121 Am. St. Rep. 957, 57 S. E. 626]; *McCallam* v. *Hope Natural Gas Co.,* 93 W. Va. 426 [117 S. E. 148].) But, as respondent contends, there are certain exceptions to the foregoing rule under which it has been held that the child may recover said expenses, among them being where the child has paid or is legally bound to pay the same (Sutherland on Damages, sec. 1250, note 70); or is under guardianship, thereby making his estate legally liable therefor (1 Sedgwick on Damages, sec. 226f; *Stotler* v. *Chicago & A. Ry. Co.,* 200 Mo. 107 [98 S. W. 504]), and in some jurisdictions it has been held that if the parent appears as guardian *ad litem* in an action brought by the child, and includes therein as elements of damages loss of wages and the payment of medical expenses, reimbursement for which under the general rule would accrue to him, he is deemed to have waived the right to recover the same in favor of the child, such waiver operating in the nature of an emancipation and conferring upon the child the right to recover said wages and expenses. (*Donald* v. *City of Ballard,* 34 Wash. 576 [76 Pac. 80]; *Daly* v. *Everett Pulp & Paper Co.,* 31 Wash. 252 [71 Pac. 1014]; *Abeles* v. *Bransfield,* 19 Kan. 16; *Chicago Screw Co.* v. *Weiss,* 203 Ill. 536 [68 N. E. 54]; *Central of Georgia Ry. Co.* v. *McNab,* 150 Ala. 332 [43 South. 222].) The evidence in the instant case shows, however, that the parent and not the child incurred all of said expenses and has actually paid some of them; and the obligation to pay the balance is not legally enforceable against the child personally (Civ. Code, secs. 34 and 35) nor against his estate, because he was not under guardianship; and even though the doctrine of waiver and emancipation as announced in the authorities above cited be accepted as the law of this state, such doctrine cannot fairly be given application in the instant case for the following reasons: The right of the father in any event to recover said expenses would be subject to the defense that he contributed to the child's injuries by negligently permitting it to be and play in a place of danger; and it would follow that the right of the child to recover said expenses in the place of the father would be subject to the same defense. **[6]** Such defense was pleaded as a ''fourth, separate, fur-

ther, and distinct'' defense in the original answer, but was eliminated from the case, on demurrer, at the instance of respondent, presumably upon the ground that such defense could not be urged in an action brought and maintained by the child. Appellant being thus deprived of the right to defend against such claim, the amount thereof could not in our opinion be afterward legally allowed to the child as an element of damage under the doctrine of waiver or emancipation.

[7] In concluding this point, it may be stated that notwithstanding the fourth separate defense of the original answer relating to the charge of contributory negligence on the part of the parents was omitted from the amended answer, and that the latter pleading contained but three separate defenses, none of which related to the contributory negligence of the parents, the trial court made a finding that ''paragraph I of defendants' fourth, separate, further, and distinct answer and defense'' was not true. Manifestly, said finding is of no force or effect because, as stated, there was no fourth defense pleaded in the amended answer.

For the foregoing reasons we conclude that the allowance of said expenses as a part of respondent's damages was erroneous, and it is therefore ordered that the judgment be modified by reducing the amount thereof to the sum of $9,915.80, the amount stricken therefrom representing the physician's fee of $750 and the cost of hospitalization and medical supplies amounting to $437, and as thus modified the judgment will stand affirmed.

Tyler, P. J., and Cashin, J., concurred.