[Civ. No. 11458. First Dist., Div. Two.—April 4, 1941.]

MINNIE RAWLINS, a Minor, etc., Respondent, v. MARTIN W. LORY et al., Appellants.

D. W. Brobst for Appellants.

Phillips & Munck and Felton L. Watson for Respondent.

SPENCE, J.—Plaintiff sought damages for personal injuries alleged to have been caused by the wilful misconduct of defendant Martin W. Lory. The cause was tried by the court sitting without a jury and plaintiff had judgment against defendant Martin W. Lory and the parents of said defendant in the sum of $1750. Defendants appeal from said judgment.

Defendants' main contention on this appeal is that the evidence was insufficient to show wilful misconduct on the part of defendant Martin W. Lory. We find no merit in this contention. There was some conflict in the evidence but considering, as we must, the evidence most favorable to plaintiff together with all legitimate inferences therefrom, the trial court was justified in determining that the following were the circumstances under which the accident occurred.

Plaintiff and defendant Martin W. Lory were school companions of the ages of 14 and 15 years respectively. Plaintiff was riding as a guest of said defendant at the time the accident occurred. Another school companion, who was driving another automobile, passed said defendant on Racine Street in the city of Oakland shortly before the accident occurred. Said defendant followed the other car at a high rate of speed, turned sharply to the left into North Street and ran into the far curb on North Street and overturned.

Racine Street was but 36 feet wide between curbs and North Street was but 32 feet wide between curbs. There was no other traffic in the vicinity at the time. As said defendant travelled along Racine Street, he was first travelling at a speed of about 30 miles per hour. Said defendant then stated to plaintiff that the brakes were not working properly and plaintiff asked to be let out of the car. Said defendant did not heed her request but continued on increasing his speed to between 40 and 45 miles per hour after the other car had passed him. Defendant was going at that speed when he attempted to negotiate the turn into North Street.

The trial court found that said defendant was guilty of wilful misconduct in that (1) he intentionally operated the automobile at a speed of 40 to 45 miles per hour, which speed was excessive at the time and place; (2) he deliberately disregarded the protest of plaintiff and her request to allow her to leave the automobile; (3) he proceeded at said excessive speed, and intending to "hang the corner", turned abruptly to the left into North Street; and (4) he suddenly applied the brakes which were defective and known to him to be defective. The trial court further found that said acts of wilful misconduct were done by defendant in reckless disregard of the safety of plaintiff, well knowing that injury to plaintiff would probably result therefrom and that said wilful misconduct caused the automobile to overturn thereby injuring plaintiff.

Defendants concede that defendant Martin W. Lory was travelling too fast but they state that "speed, of itself alone, is not wilful misconduct". This may be conceded for the purposes of this discussion but all of the circumstances, including the speed at which said defendant was driving, may be considered when determining the question of whether he was guilty of wilful misconduct within the meaning of the statute. (*Haas* v. *Jones*, 29 Cal. App. (2d) 650 [85 Pac. (2d) 579]; *Francesconi* v. *Belluomini*, 28 Cal. App. (2d) 701 [83 Pac. (2d) 298]; *Chandler* v. *Quinlan*, 25 Cal. App. (2d) 646; *Wright* v. *Sellers*, 25 Cal. App. (2d) 603 [78 Pac. (2d) 209]; *Candini* v. *Hiatt*, 9 Cal. App. (2d) 679 [50 Pac. (2d) 843]; *Norton* v. *Puter*, 138 Cal. App. 253 [32 Pac. (2d) 172].)

The term "wilful misconduct" has been frequently defined and the language of the court in *Turner* v. *Standard Oil Co.*,

134 Cal. App. 622 [25 Pac. (2d) 988], has been consistently followed and approved. The court there said at page 626, "Wilful misconduct, within the meaning of this statute, may be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result." ▮ It is not necessary that there be a deliberate intention on the part of the driver to injure the guest, but it is essential that there be an intentional act or omission on his part under circumstances disclosing the requisite knowledge, express or implied, of the probability of injury to the guest. In determining whether the circumstances are sufficient to disclose implied knowledge of such probability, an external standard is applied. In *Stacey* v. *Hayes,* 31 Cal. App. (2d) 422 [88 Pac. (2d) 165], one of the authorities relied on by defendants, the court said at page 426, "The probability of injury to the guest from such act or omission must have been an apparent consequence to a man of ordinary prudence and intelligence."

▮ It is entirely clear in the present case that the defendant driver intentionally did certain acts which he should not have done. It is conceded that he was intentionally driving at an excessive speed and accepting, as did the trial court, the testimony most favorable to plaintiff, it appears that he was intentionally travelling at such excessive speed with knowledge that the brakes were not working properly and after ignoring plaintiff's request that she be allowed to leave the car. It is also a legitimate inference from the testimony that the defendant driver was racing to overtake the other car and that he was engaging in what may be termed skylarking in "hanging the corner" into North Street. By the term "skylarking" we mean the indulging in antics or the cutting of capers with such automobile. (See Webster's New International Dictionary, 2d ed.) ▮ It is a matter of common knowledge that such skylarking at high rates of speed is engaged in at times by drivers, and particularly by youthful drivers, merely for the sake of the thrill which it produces and with reckless indifference to consequences. ▮ A driver who engages in such conduct is "knowingly flirting with danger" without necessity compelling him to take the chance. (See *Francesconi* v. *Bel-* .

*luomini, supra*; *Chandler* v. *Quinlan*, 25 Cal. App. (2d) 646, 648 [78 Pac. (2d) 235].) The probability of injury to a guest from such conduct is an apparent consequence to any person of ordinary prudence and, applying the external standard above mentioned, any driver engaging in such conduct is charged with implied knowledge of the probability of such injury. The type of conduct which we have termed skylarking appears to be the precise type of conduct, or at least one of the types of conduct, which the legislature had in mind when it used the term ''wilful misconduct'' in the so-called guest statute and whenever the testimony shows, directly or by legitimate inference, that a driver was engaging in such conduct, such evidence is sufficient to show wilful misconduct and to support a finding thereof. As above indicated, we are of the view that such was a legitimate inference from the testimony in this case. 

Defendants further contend that the evidence was insufficient to support the finding to the effect that the defendant driver was operating the automobile with the consent of his parents. Plaintiff concedes that there was no evidence to support this finding, it appearing that said parents did not own said automobile or know of its existence. In this connection, it may be stated that the defendant driver and his companion who was driving the other car above mentioned had temporarily exchanged cars shortly before the accident. But the above mentioned finding was an immaterial finding here for it was alleged in the amended complaint, admitted by the answer and found by the trial court that the parents of the defendant driver had signed and verified the application of the defendant driver for his operator's license. This last mentioned finding was admittedly correct and the parents were therefore jointly and severally liable with the defendant driver under the provisions of subdivision (a) of section 352 of the Vehicle Code. The liability imposed by said subdivision (a) is in no way dependent upon the consent, express or implied, of his parents to the driving of the automobile as is the liability imposed by subdivision (b) of said section.

Defendants further contend that ''the findings are prejudicially erroneous in that damages are awarded in one sum with no finding as to special damage''. The amended complaint alleged general damage in the sum of $10,000 and special damage, including expenses incurred for physicians,

medicines and hospitalization, in the sum of $311.50. These allegations were denied by the answer. Evidence was offered in support of the allegations of special damage and objection was made thereto upon the ground that the parents of the plaintiff were the ones primarily liable for the expenses incurred and that said parents were not parties to the action. (*McManus* v. *Arnold Taxi Corp.*, 82 Cal. App. 215 [255 Pac. 755].) The objection was overruled and the evidence was admitted. The trial court found that "As proximate results of the said wilful misconduct of the defendant Martin W. Lory, the plaintiff suffered injuries to her person consisting of a fracture of the right wrist, extensive lacerations of the wrist, a laceration in the region of the right elbow, and pain, suffering and shock, and the plaintiff was compelled to and did incur expenses for medicines and hospitalization, to her damage in the sum of $1750.00."

Before considering the failure of the trial court to make a specific finding on the issue of special damage, it is appropriate to consider whether the evidence of the expenses necessarily incurred was properly admitted in this action. The bill covering said expenses was made out in the name of the plaintiff and said bill had not been paid. Anna Rawlins, the mother of the plaintiff, was appointed guardian *ad litem* and she caused these expenses to be included as elements of plaintiff's claim for damages in this action. Under these circumstances, we believe that evidence of such special damage was properly admitted and that plaintiff was entitled to recover such special damages in this action under the doctrine of waiver, "such waiver operating in the nature of an emancipation and conferring upon the child the right to recover said . . . expenses." (See *McManus* v. *Arnold Taxi Corp.*, *supra* [82 Cal. App. 215, 224 (255 Pac. 755)].) Unlike the situation presented in the McManus case, there was no claim made here that there was any negligence on the part of the parents of plaintiff which would affect the right of plaintiff or her parents to recover such special damages.

Having concluded that plaintiff was entitled to recover said special damages, we turn to the question of whether the failure of the trial court to make a finding on that issue constituted prejudicial error. It may be conceded that the failure to make such finding constituted error (*James* v. *Haley*, 212 Cal. 142 [297 Pac. 920] ; *Scoville* v. *Keglor*, 27 Cal.

App. (2d) 17 [80 Pac. (2d) 162]), but as was said in the last mentioned case at page 30, ''It does not in all cases follow that errors of this description are prejudicial to the losing party.'' The only special damages alleged and proved were the expenses incurred in the sum of $311.50. The uncontradicted evidence showed that the amounts charged for the various services were reasonable and that said expenses were necessarily incurred. It further appears from the quoted finding that the trial court intended to award general damages and also special damages covering said expenses in the total sum of $1750. The evidence shows that said total award was entirely reasonable and defendants make no claim that it was excessive. While we believe that the judgment might be affirmed without additional findings upon the ground that said error was not prejudicial, it appears that this is an appropriate case for this court, in affirming the judgment, to make additional findings. (*Linberg* v. *Stanto,* 211 Cal. 771 [297 Pac. 9, 75 A. L. R. 555] ; *Hodges* v. *Gonzales,* 5 Cal. App. (2d) 86 [42 Pac. (2d) 359].) We therefore find that as proximate results of the wilful misconduct of defendant Martin W. Lory, plaintiff suffered special damage in the sum of $311.50 and general damage in the sum of $1438.50, making a total of $1750.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.