### GILL v. MINTER et al.
#### No. 12147.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 11, 1950.

Rehearing Denied Nov. 15, 1950.

T. J. Saunders, Jr., and Bobbitt, Brite & Bobbitt, all of San Antonio, for appellant.

Carl Wright Johnson, Nat L. Hardy, San Antonio, for appellees.

586

NORVELL, Justice.

This is a guest statute case, Article 6701b, Vernon's Ann.Civ.Stats., which terminated in an instructed verdict for defendants. Appellant concedes that there is no evidence of liability against Merton Minter Sr., but contends that the evidence, when viewed in the light most favorable to appellant, is sufficient to show gross negligence on the part of the appellee Merton Minter Jr. The descriptive words of the statute relating to negligence have the same meaning as the term "gross negligence." Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571. In Texas Pac. Coal & Oil Co. v. Robertson, 125 Tex. 4, 79 S.W.2d 830, 831, it was said that:

"The definition of gross negligence which has probably been quoted oftener than any other by the courts of this state is that given by Judge Stayton in Missouri Pacific Ry. Co. v. Shuford, 72 Tex. 165, 10 S.W. 408, 411, and is as follows: 'Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it.'

"Similar definitions are given in Southern Cotton Press, etc. Co. v. Bradley, 52 Tex. 587, and International & Great Northern R. Co. v. Cocke, 64 Tex. 151.

"It is to be observed that the definition quoted uses the words 'conscious indifference,' thus stressing the mental attitude of the person charged to have been grossly negligent. Gross negligence is positive or affirmative, rather than merely passive or negative as ordinary negligence often, and perhaps usually, is. As said in the discussion in Ruling Case Law of the right to recover exemplary damages for gross negligence: 'The rule is that recovery is permitted, in, and confined to, cases where the negligence is willful, or where it is so gross as to indicate wantonness or malice.' 8 R.C.L. p. 590. Mere indifference is not enough. The indifference must be *conscious*."

Bearing in mind the rules above set forth, we examine the evidence in the case. It appears that after school on the afternoon of October 15, 1948, Merton M. Minter, Jr., left Thomas Jefferson High School in his automobile with the intention of going to the athletic field of the Peacock Military Academy where a football game was scheduled. Minter was then fifteen years old and possessed a driver's license. Four girls about his age, all students of Thomas Jefferson High School, accompanied him as gratuitous guests. While driving south on Lake Boulevard Minter collided with an automobile travelling in an easterly direction along West Mistletoe Avenue, which was being driven by Diane Schlather, also a student of Thomas Jefferson. Betty Jo Gill, appellant's daughter, was sitting in the front seat of Minter's car and sustained injuries as a result of the collision.

Betty Jo Gill testified that young Minter drove the car, a 1947 two-seat Ford coupe, at a reasonable rate of speed until he reached a point on Lake Boulevard, three or four blocks from the Mistletoe intersection. At this point, it seems that a boy named Billy Thornton attempted to pass the Minter car on the right, whereupon Minter suddenly speeded up. Betty Jo testified that she and one of the other girls requested Minter to slow down; that she said, "Merton, please slow down," but that he failed to do so and kept looking back at Billy Thornton's car which he was leaving behind him; that she saw the speedometer on the car and that Minter travelled fifty or sixty miles an hour in his attempt to prevent Billy Thornton's passing him; that she did not know whether or not Minter put on his brakes before the collision; that shortly before the impact one of the girls screamed, "Slow down, we are going to have a wreck"; that she, Betty Jo, put her hands over her face when she saw the other car coming; that she was sort of knocked out for a few minutes as a result of the collision, "her eyes were all blurred and everything and (she) didn't know what happened;" that Billy Thornton had come up to the scene of the collision and that he took her to a sorority meeting; that her

mother was then notified and came and took her home.

Betty Jo's testimony was corroborated in the main by Peggy Jean Rowe, who was also a passenger in this car. Leon Taliaferro, principal of the Horace Mann School, which is situated on Lake Boulevard about two blocks from the Mistletoe intersection, testified that he saw the Minter car and estimated that it passed the school grounds at a rate of speed from forty to forty-five miles an hour. Classes from Horace Mann had been dismissed a half hour earlier, but some members of the student body remained at the school and the children would naturally be crossing Lake Boulevard.

Col. James Farber, whose residence was situated near the northwest corner of the intersection where the collision occurred, testified that immediately prior to the collision his attention was attracted by the sound of an automobile proceeding south on Lake Boulevard. The colonel described the sound as that of "an automotive engine going at high revolutions per minute."

J. L. Kinzel, a traffic investigator of the San Antonio Police Department, who was called to the scene some ten minutes after the collision and while the automobiles involved were still upon the scene, testified that on the northwest corner of the Lake Boulevard-Mistletoe intersection there was some shrubbery which obstructed the view; that "the automobile going south (the Minter car) was damaged in the front and the automobile going east (the Schlather car) was damaged along the left side right in the middle." This statement and another similar thereto by the same witness constitute the only evidence in the record relating to the condition and appearance of the automobiles after the collision. Kinzel testified that he was able to estimate the approximate speed of an automobile from an examination of skid marks appearing on the pavement as a result of brakes having been applied. In his opinion, the Minter car was travelling "in excess of thirty miles an hour, * * * from thirty-five to fifty miles per hour," shortly before the collision. As to the nature of the skid marks made by the Minter car, the police officer testified that: "It was plain that the full breakage power had not been applied, the driver apparently did not put his foot down hard on the pedal, he slackened his speed, but did not apply full pressure, that kept his wheels from sliding. They were light skid marks showing that the brakes were applied for at least seventy-five feet."

Kinzel's estimate was that at the time of the impact, the Minter car was travelling at a rate of fifteen miles per hour; that the Schlather car had swerved out ahead of it and had been turned back northwest, and that the Minter car proceeded about six feet after the collision.

■ In our opinion, the court below correctly held that the evidence in this case fails to raise a fact issue as to the existence of gross negligence on the part of Merton Minter, Jr. It is undisputed that young Minter used his brakes and made some attempt to slow down the automobile before the collision occurred. It may be inferred from Kinzel's testimony that Minter failed to brake his car sufficiently, as the skid marks did not indicate that the wheels were locked. The fact that the Minter car travelled only six feet from the point of collision indicates that had the car been severely braked the Schlather car might have passed safely in front of the Minter car and the collision thus avoided. These circumstances suggest failures within the definition of ordinary negligence, such as a mistake in judgment or a period of inattentiveness rather than conscious indifference. This case is clearly distinguishable from Bowman v. Puckett, 144 Tex. 125, 188 S.W. 2d 571, 573, where known defective brakes were slammed on after all possibility of avoiding disaster had passed. We have mentioned the brief description of the physical damage to the automobiles here involved. In Bowman v. Puckett it was pointed out that the Puckett car was "described by witnesses as a total wreck. The top was crushed and the body was bent into the shape of a rocking chair, so that neither the front nor the rear wheels would touch the ground."

We also believe that the present case is likewise clearly distinguishable upon the

facts from Kirkpatrick v. Neal, Tex.Civ. App., 153 S.W.2d 519, also relied upon by appellant.

In support of his position, appellant also cites two California cases, Parsons v. Fuller, 8 Cal.2d 463, 66 P.2d 430, and Rawlins v. Lory, 44 Cal.App.2d 20, 111 P.2d 973. While under the Texas guest statute liability may be based upon either an intentional or grossly negligent action, the California law (since 1931) in effect restricts liability to an injury or death resulting from "wilful misconduct." Parsons v. Fuller, supra. The California courts hold that the driver of an automobile is guilty of "wilful misconduct" when, with reckless indifference to consequences, he knowingly flirts with danger for the sake of the thrill produced by the close proximity to death or injury. Such conduct is described as "skylarking" by the California courts.

The evidence in this case will not support the theory that Merton Minter, Jr., was guilty of wilful misconduct in the form of "skylarking" or that he intentionally caused the accident. Art. 6701b.

The judgment is affirmed.