[Civ. No. 17552. First Dist., Div. One. Mar. 17, 1958.]

SUE ENOS, a Minor, etc., et al., Respondents, v. PETE S. MONTOYA, Appellant.

Nelson, Boyd & Menary and D. Kenneth MacDonald for Appellant.

Charles R. Garry and Dreyfus & McTernan for Respondents.

McMURRAY, J. pro tem.* — Plaintiff Sue Enos, acting through her guardian *ad litem*, recovered a verdict against the defendant Pete S. Montoya in an action for damages for personal injuries sustained while a guest in defendant's automobile. This appeal is from the judgment on such verdict. The complaint alleged intoxication and wilful misconduct on the part of defendant.

Sue Enos, aged 18, in company with Marshall Dixon, Diane Pollock and Pete Montoya went to a beach party at Muir Beach. There were a number of other young people at that party. Pete Montoya bought a case of beer to take to the party and there is testimony that he drank four cans of beer while at the beach, one can quite rapidly. There is also evidence that he had two bottles of beer at 10 or 10:30 a.m. on the day of the accident, and that after the accident he had told an investigator that he had "about two beers" at about 5 p.m., the day of the accident, a statement which defendant admitted making, but, at the time of trial, stated was false. There was also testimony that defendant drank a beer while driving to the beach party. After the accident, defendant told the investigating highway patrolman that he had not been drinking before the accident.

It also appears that while at the beach defendant sang louder than usual, giggled a lot and made affectionate advances toward Diane Pollock.

Upon leaving the beach party at about 11 p.m., there was no beer left in the case taken there by defendant for his group, although there was testimony that generally the members of each group drank only beer brought for that group. The party had lasted for about an hour and a half to two hours.

Sue Enos had been working during the day and had been out the night before. Upon entering defendant's car on the homeward trip, she almost immediately fell asleep in the back seat, and did not waken until the car went over the bank off the road.

From the testimony, the jury could well have found that a car driven by Doyle Nance followed defendant's car up the grade over a winding road at a distance of from 10 to 15 feet behind. While proceeding up this road, defendant steadily accelerated the speed of his car until he was driving at about 35 miles per hour when he failed to complete one of the sharp

*Assigned by Chairman of Judicial Council.

turns in the road and went over a steep bank with resultant injuries to plaintiff.

There is conflict in the evidence, but the foregoing facts were all before the jury.

After the accident, defendant told the investigating highway patrol officer that his speed was 20 to 25 miles per hour and that an oncoming car with blinding headlights had come down the wrong side of the road and forced him to go over the side. He also stated that he had not been drinking. Under the undisputed evidence at the trial, these were untrue statements.

 In this appeal, appellant contends that the trial judge erred in admitting opinion evidence of the California highway patrolman who investigated the accident as to what was a reasonable or prudent speed at the curve where the accident occurred.

This officer testified that he had examined the curve at which this accident took place and had driven automobiles comparable to appellant's around the curve a number of times under road conditions comparable to those that existed at the time of the accident, that he had formed an opinion that, having due regard to the surface and width of the highway and the curve and without danger to the safety of persons or property, the reasonable or prudent speed at that curve was 15 to 18 miles per hour.

The appellant complains that this was not a proper subject for expert testimony, as it is on a matter which is within the common experience of men and needs no specialized knowledge to assist the jury in reaching a conclusion.

 However, as is said in *Zelayeta* v. *Pacific Greyhound Lines,* 104 Cal.App.2d 716, 723 [232 P.2d 572] : ". . . in our opinion, it was within the discretion of the trial court to admit this opinion evidence" and at pages 726-727 : ". . . expert testimony is admissible or not dependent upon whether the subject matter is within common experience or whether it is a special field where the opinion of one of skill and experience will be of greater validity than that of the ordinary juryman. It is quite obvious that the conclusion, based upon the facts of the particular case, as to just where a collision between two vehicles occurred, may be so obvious that any person, trained or not, can draw that inference from the facts. It is equally clear that cases may occur where the opinions of trained experts in the field on this subject will be of great assistance to the members of the jury in arriving

at their conclusions. In such cases a traffic officer who has spent years investigating accidents in which he has been required to render official reports not only as to the facts of the accidents but also as to his opinion as to their causes, including his opinion, where necessary, as to the point of impact, is an expert. Necessarily, in this field, much must be left to the common sense and discretion of the trial court.''

In *Risley* v. *Lenwell*, 129 Cal.App.2d 608 at 631 [277 P.2d 897], it is said: ''It seems to be well established that traffic officers whose duties include investigations of automobile accidents are qualified experts and may properly testify concerning their opinions as to the various factors involved in such accidents, based upon their own observations.''

Where, as was here the case, the jury's knowledge of the roadway must be limited to that shown by the evidence, it would seem to be an unrealistic position to insist that what was a prudent speed on the subject curve was a matter exclusively within the jury's fact finding power which should not be ''invaded'' by opinion evidence. The proper rule would appear to be to allow such opinion evidence to assist the jury, if the jury, applying proper instructions, such as were here given, deems such evidence to be helpful. As was said in *People* v. *Cole,* 47 Cal.2d 99 at 105 [301 P.2d 854] : ''The jurors, of course, were not bound by the opinion of the witness but were free to determine the weight to which it was entitled and to disregard it if they found it to be unreasonable, and they were so instructed.''

Appellant also argues that the officer's testimony should not have been admitted because he was not properly qualified as an expert upon the subject of what was a reasonable speed on the curve where the accident occurred.

The officer had attended a training school conducted by the Highway Patrol and had investigated 175 to 200 accidents in his more than two years of service with the Highway Patrol and had made reports of such accidents to his superiors.

Furthermore, it should be remembered that the opinion evidence was based upon the officer's personal observations as to a reasonable and prudent speed around the curve, gained by experiment on a number of occasions under comparable conditions and in cars comparable to that driven by appellant at the time of the accident.

Appellant also contends that there is insufficient evidence to establish wilful misconduct. This contention ignores the abundant evidence adduced at the trial and attempts to

impose upon a party seeking to establish wilful misconduct the almost impossible burden of proving the intention of the actor to be charged by positive evidence of such intention. We do not deem the rule to be such. Where, as here, there is evidence which, if believed, would justify the jury in finding that defendant, while racing up a road he knew to be winding and steep in a competition with a trailing car, failed to negotiate a curve at almost twice the speed estimated to be prudent, it would appear to be extremely artful to urge that such facts could not be the basis for a finding that defendant's actions were not intentionally done under circumstances which disclosed knowledge, express or implied, that an injury to a guest would be a probable result. If such evidence was believed by the jury, it would be difficult to justify any result other than that reached here. The case of *Rawlins* v. *Lory*, 44 Cal.App.2d 20 at pages 24 and 25 [111 P.2d 973], contains language particularly apposite here, although the facts were somewhat different: ''It is also a legitimate inference from the testimony that the defendant driver was racing to overtake the other car and that he was engaging in what may be termed skylarking in 'hanging the corner' into North Street. By the term 'skylarking' we mean the indulging in antics or the cutting of capers with such automobile. (See Webster's New International Dictionary, 2d ed.) It is a matter of common knowledge that such skylarking at high rates of speed is engaged in at times by drivers, and particularly by youthful drivers, merely for the sake of the thrill which it produces and with reckless indifference to consequences. A driver who engages in such conduct is 'knowingly flirting with danger' without necessity compelling him to take the chance. (See *Francesconi* v. *Beluomini, supra* [28 Cal.App.2d 701 (83 P.2d 298)]; *Chandler* v. *Quinlan*, 25 Cal.App.2d 646, 648 [78 P.2d 235].) The probability of injury to a guest from such conduct is an apparent consequence to any person of ordinary prudence and, applying the external standard above mentioned, any driver engaging in such conduct is charged with implied knowledge of the probability of such injury. The type of conduct which we have termed skylarking appears to be the precise type of conduct, or at least one of the types of conduct, which the legislature had in mind when it used the term 'wilful misconduct' in the so-called guest statute and whenever the testimony shows, directly or by legitimate inference, that a driver was engaging in such conduct, such

evidence is sufficient to show wilful misconduct and to support a finding thereof.''

█ Appellant next contends that it was prejudicial error for the court not to instruct on the defense of contributory negligence. This contention appears to be made in relation to evidence that respondent had also been drinking beer and thereby had been guilty of misconduct which entered into or induced the misconduct or intoxication of the host or it is supposed, in this case, into both such intoxication and misconduct.

The presentation of this argument is further supplemented by an urging that elaborate instructions on the difference between assumption of risk and contributory negligence should have been given.

█ It is true that under certain circumstances a guest who knows that his host has been drinking will be precluded from recovery; the circumstances arise when the guest has sufficient knowledge so that he knows or should have known that the host is incapable of careful driving (*Lindemann* v. *San Joaquin Cotton Oil Co.*, 5 Cal.2d 480 [55 P.2d 870]) or the guest has so participated in the drinking activities as to be in equal fault with him. (*Pennix* v. *Winton*, 61 Cal.App.2d 761 [143 P.2d 940, 145 P.2d 561].)

█ In the facts here presented, neither of these circumstances was present. The testimony shows no evidence that appellant was obviously intoxicated nor does it show such participation in the drinking activities by respondent as to bring her within the rule.

Factually, respondent's act of going to sleep on entering the car is far different from the case of *Whitsett* v. *Morton*, 138 Cal.App. 628 [33 P.2d 54], cited by appellant, and here the only misconduct of appellant took place after respondent was asleep and unaware of appellant's reckless acts. The court acted properly in refusing the instruction requested.

█ Appellant states that certain instructions relative to assumption of risk were prejudicially erroneous.

The first of these instructions was: ''If you find that plaintiff, Sue Enos, under all the circumstances as you find them to have been on the evening of the accident, did what a reasonable person would have done in the exercise of ordinary care for his, or her, own safety, then I instruct you that assumption of risk would not bar plaintiff from recovery.''

Appellant renews his argument that by omitting the instruction on contributory negligence and giving this instruc-

tion the court eliminated both contributory negligence and assumption of risk as defenses if the jury found that respondent acted reasonably.

These contentions are not persuasive under the facts here under review and the instruction complained of was merely one instruction among several which did correctly state the rules on assumption of risk. Even if the jury had acted under the portion of the instruction complained of, it is difficult to understand how this could harm appellant. The instruction was more advantageous to appellant than to respondent insofar as the duty of care required is concerned.

In any event, a full and sensible reading of the instruction in context, in view of the facts before the jury and in view of accompanying correct instructions, was not prejudicially erroneous.

■ The other instruction relative to assumption of risk of which appellant complains read: "If you find the defendant Pete Montoya guilty of either wilful misconduct or intoxication, as these have been defined to you, then assumption of risk would constitute no defense to the action unless you find, first, that the plaintiff, Sue Enos, had a reasonable opportunity to leave the car, or refused to ride in it, and second, that a person exercising ordinary care for her own safety under the circumstances would have taken that opportunity."

The appellant earnestly argues that the use of the word "refused" instead of "refuse" deprived him of the defense of assumption of risk.

A focussing of attention upon one word, in one instruction of many, and an urging that such single word constitutes reversible error might sometimes be valid. Here it does not so appear. The ordinary elision of the spoken words "refuse to" and "refused to" would usually make it impossible to distinguish between the two tenses of the word and this court will not apply such meticulously surgical refinement to the dissection of an instruction to arrive at an interpretation adverse to reason.

■ An instruction which reads as follows was given: "If you find from the evidence that the defendant, Pete Montoya, was speeding to stay ahead of the car following him, or that he and the driver of the car behind him were competing in any way concerning the speed of their cars, or the speed at which they would negotiate the curves on the road, then I instruct you that the defendant is charged by law with the implied

knowledge of the probability of injury to his guests and is guilty of wilful misconduct.''

While this instruction is probably not a valid statement of the abstract rule relative to wilful misconduct in speeding to stay ahead of a car behind, or competing with such other car as to the speed at which a curve could be negotiated, as it does not contain a limiting statement that unless these acts were done under circumstances disclosing knowledge, express or implied, that an injury to a guest was a probable result, nevertheless, the jury in applying the instruction given were applying it to the particular facts as disclosed by the testimony in this particular case.

When so applied, that is, to the testimony relative to competing and the surrounding circumstances including the testimony of Diane Pollock that just before the accident she said to appellant: ''Take it easy, Pete. Don't let him rattle you,'' the instruction would appear to be a correct statement of the law, particularly when the record discloses that appellant was familiar with the road. (*Rawlins* v. *Lory, supra,* 44 Cal.App. 2d 20.)

Appellant also argues that the court erred by instructing the jury: ''You have heard, through the evidence and otherwise in this case, something with regard to the speed law of fifty-five miles an hour. That is the prima-facie speed law in this State. I will now instruct you with regard to the basic speed law in this State. You are instructed that section 510 of the Motor [Sic] Vehicle Code reads as follows:

'' 'Basic Speed Law. No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.' ''

Although appellant did not submit an instruction on section 511 of the Vehicle Code, he states that he did request the court to so instruct if the above instruction was given. The court did not so instruct.

The quoted instruction might well have been omitted, but no harm appears to have been done appellant by its being given.

The judgment appealed from is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 16, 1958.